UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| FaceTec, Inc.,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>iProov, Ltd.,<br><br>　　　　　　　Defendant. | Case No. 2:21-cv-02252-ART-BNW<br><br>**ORDER** |
| iProov, Ltd.,<br><br>　　　　　　　Counter-Claimant,<br><br>　v.<br><br>FaceTec, Inc.,<br><br>　　　　　　　Counter-Defendant. | |

This is a patent dispute over facial-recognition software in which both companies assert patent-infringement claims against the other. Before the Court are two related motions: FaceTec's motion to compel (ECF No. 89) and iProov's motion to strike (ECF No. 99). The Court heard oral argument on both motions. For the reasons discussed below, the Court grants FaceTec's motion to compel and denies iProov's motion to strike.

**I.　BACKGROUND**

iProov is the developer and patent owner of Liveness Assurance, which is a software that verifies whether an online user is real and the right person to access sensitive information through facial-recognition technology. ECF No. 99 at 2. FaceTec alleges that this software infringes its two patents. ECF No. 98 at 3. The two motions before the Court only concern FaceTec's, not iProov's, infringement claims.

This district's local patent rules ("LPRs") set forth a series of disclosures that each party must make in a patent case. *See generally* LPRs. As part of these disclosures, a party claiming patent infringement must serve infringement contentions, which include a claim chart or charts that specifically identify how the accused instrumentalities allegedly infringe each limitation of each patent. LPR 1-6(c). The party defending against patent infringement must then produce certain discovery, including source code, of the instrumentalities accused in the infringement contentions. LPR 1-9(a).

In August of 2022, FaceTec served its preliminary infringement contentions, in which it defined the accused instrumentalities as all iProov products that included the Liveness Assurance software. ECF 89 at 3. iProov asked FaceTec to supplement its contentions because it believed that they did not show infringement of any accused instrumentality. ECF No. 98 at 4. The parties conferred, and FaceTec agreed to amend its preliminary infringement contentions to include more details about its infringement allegations. ECF No. 89 at 3; ECF No. 98 at 4. At this conference, iProov did not mention the issue it brings up now—that FaceTec's definition of accused instrumentalities was overbroad and that FaceTec did not accuse the mobile platforms of Liveness Assurance. ECF No. 89 at 3. In July of 2023, FaceTec served its amended infringement contentions, which contained the same definition of accused instrumentalities as its prior contentions but added more details to its claim charts. ECF No. 89 at 4.

iProov argues that the details FaceTec added to its amended claim charts were specific to the web platform of Liveness Assurance, and therefore, only accused the web platform. ECF No. 98 at 4. Conversely, FaceTec argues that it accused both the web and mobile platforms in its amended infringement contentions. ECF No. 89 at 3. The parties' differing views on this issue did not surface until approximately eight months later, when FaceTec requested that iProov produce the source code of the mobile platforms of Liveness Assurance. ECF No. 89 at 4. This request erupted into the two instant motions before the Court.

/ / /

/ / /

/ / /

## II.   MOTION TO COMPEL

### A. Legal Standard

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). Relevant information is broad and need not be admissible in evidence to be discoverable. Under FRCP 37, "a party seeking discovery may move for an order compelling an answer, designation, production, or inspection." Fed. R. Civ. P. 37(a)(3)(B). "The party seeking to compel discovery has the burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)(1). Thereafter, the party opposing discovery has the burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining or supporting its objections." *Garces v. Pickett*, No. 2:17-CV-0319-JAM-ACP, 2021 WL 978540, at *2 (E.D. Cal. Mar. 16, 2021) (citations omitted).

Patent cases are unique because the LPRs mandate some early discovery. For example, the preliminary infringement contentions take "the place of a series of interrogatories that defendants would likely have propounded had the patent local rules not provided for streamlined discovery." *Uniloc 2017 LLC v. Apple, Inc.*, No. 19-CV-01929-EJD-VKD, 2020 WL 978678, at *2 (N.D. Cal. Feb. 28, 2020) (quoting *Network Caching Tech., LLC v. Novell, Inc.*, No. 01-CV-2079-VRW, 2002 WL 32126128, at *4 (N.D. Cal. Aug. 13, 2002)).[1] Additionally, defendants are required to produce certain information, like source code, for any aspects or elements of an accused instrumentality identified in the claim charts. LPR 1-9(a). As numerous courts point out, the LPRs "are designed to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed." *See, e.g., Taction Tech.,*

---

[1] The Court finds opinions from the Northern and Southern District Courts of California persuasive because the LPRs relevant to this Order (e.g., LPR 1-6, LPR 1-9) are nearly identical to the patent rules in those districts (e.g., Patent Local Rules 3.1, 3-1, 3.4, 3-4). *See, e.g., Signify N. Am. Corp. v. Lepro Innovation Inc.*, 2:22-cv-02095-JAD-DJA, 3 n.7 (D. Nev. Oct. 5, 2023) ("The local patent rules for the District of Nevada are similar to those in the Northern District of California, so I consider opinions by courts in those districts persuasive.").

*Inc. v. Apple Inc.*, 686 F. Supp. 3d 995, 1006 (S.D. Cal. 2023) (quoting *Wi-LAN Inc. v. LG Elecs., Inc.*, No. 18-CV-01577-H-BGS, 2019 WL 5790999, at *2 (S.D. Cal. Sept. 18, 2019)).

### B. FaceTec's preliminary infringement contentions regarding the mobile platforms do not give iProov sufficient notice under LPR 1-6(a).

The first question before the Court is whether FaceTec's preliminary infringement contentions, as they relate to the mobile platforms of Liveness Assurance, give iProov sufficient notice under LPR 1-6.[2] LPR 1-6 states that the preliminary infringement contentions must contain:

> Separately for each asserted claim, each accused apparatus, product, device, process, method, act, or other instrumentality ("Accused Instrumentality") of each opposing party of which the party is aware. This identification must be as specific as possible. Each product, device, and apparatus must be identified by name or model number, if known. Each method or process must be identified by name, if known, or by any product, device, or apparatus which, when used, allegedly results in the practice of the claimed method or process. . . . [And a] chart identifying specifically where each limitation of each asserted claim is found within each Accused Instrumentality . . .

LPR 1-6(b)–(c). "All courts agree that the degree of specificity under [LPR 1-6] must be sufficient to provide reasonable notice to the defendant why the plaintiff believes it has a reasonable chance of proving infringement." *Geovector Corp. v. Samsung Elecs. Co.*, No. 16-CV-02463-WHO, 2017 WL 76950, at *3 (N.D. Cal. Jan. 9, 2017) (quoting *Shared Memory Graphics LLC v. Apple, Inc.* 812 F. Supp 2d 1022, 1025 (N.D. Cal. 2010)) (cleaned up). The Federal Circuit described this notice requirement as putting "the opposing party and the court on notice of plaintiff's position as to 'where each element of each infringed claim is found within the accused device.'" *Golden v. United States*, 156 Fed. Cl. 623 (2021), *aff'd*, No. 2022-1196, 2022 WL 4103287 (Fed. Cir. Sept. 8, 2022) (quoting *Iris Corp. Berhad v. United States*, 84 Fed. Cl. 12, 16 (2008)). Plaintiffs may show "where each limitation of each asserted claim is found within each

---

[2] The parties do not dispute that FaceTec properly accused the web platform of Liveness Assurance in its preliminary infringement contentions. *See* ECF No. 98 at 6, 12. iProov does note, however, that FaceTec cites evidence relating to a product that is entirely separate from Liveness Assurance, Genuine Presence Assurance, in its claim charts. ECF No. 99 at 9; ECF No. 113 at 7. FaceTec does not address this point. To the extent iProov is correct, the Court directs FaceTec to fix this mistake in its final infringement contentions.

[accused product]" through a claim chart. Claim charts describe how the product at issue operates in a way that infringes each limitation (or element)[3] of a patent. Though a plaintiff need not disclose specific evidence nor prove its case at this stage, it must explain how the product infringes each limitation to the extent information is reasonably available to it. *DCG Sys. v. Checkpoint Techs., LLC*, No. 11-CV-03792-PSG, 2012 WL 1309161, at *2 (N.D. Cal. Apr. 16, 2012).

FaceTec generally argues that its preliminary infringement contentions gave iProov notice that it was accusing the mobile platforms of Liveness Assurance because it defined "Accused Instrumentalities" as "all [iProov] products that contain . . . 'Liveness Assurance™' technology" and because it references the mobile platforms throughout the claim charts. ECF No. 89-6 at 2; ECF No. 89 at 8–10. FaceTec puts forth various examples of it using pictures of tablets/phones and language that references the mobile platforms, such as "hand-held device" and "a camera-equipped smartphone, computer, or tablet," in its claim charts. *Id.* at 9–11; ECF No. 89-6 at 13. FaceTec uses these examples to argue that its preliminary infringement contentions, including its claim charts, have complied with LPR 1-6 because they give iProov sufficient notice of FaceTec's infringement claims as to the web and mobile platforms. ECF No. 89 at 11–12; ECF No. 108-1 at 5. It emphasizes that the LPRs do not require evidence or proof of infringement theories at the preliminary stage. ECF No. 89 at 11–12; ECF No. 108-1 at 6–7.

iProov generally argues that FaceTec's preliminary infringement contentions did not give it notice that FaceTec was also accusing the mobile platforms because the claim charts reference pictures and language that are specific to the web platform. ECF No. 98 at 6–7, 9; ECF No. 113 at 3–4. iProov further argues that the pictures and language regarding phones/tablets and "hand-held

---

[3] Elements have the same meaning as limitations but are used in reference to accused products. "In our prior cases, we have used both the term 'element' and the term 'limitation' to refer to words in a claim. It is preferable to use the term 'limitation' when referring to claim language and the term 'element' when referring to the accused device." *Festo v. Shoketsu*, 234 F.3d 558, 563 n.1 (Fed. Cir. 2000) (en banc).

"devices"[4] do not give it notice of the mobile platforms because the web platform can be used on phones/tablets and because a plaintiff cannot satisfy the LPRs by "mixing and matching between different accused products." ECF No. 98 at 11 (quoting *Geovector Corp. v. Samsung Elecs. Co.*, No. 16-CV-02463-WHO, 2017 WL 76950, at *11 (N.D. Cal. Jan. 9, 2017)). It argues that FaceTec does not cite "evidence" of the mobile platforms in its claim charts. *Id.* at 8–9. Based on these arguments, iProov contends that it did not, and still does not, have notice of FaceTec's infringement theories as to the mobile platforms. ECF No. 113 at 10.

Here, FaceTec's preliminary infringement contentions did not give iProov notice of FaceTec's position as to how the mobile platforms allegedly infringed each element of its two patents because its claim charts are specific to the web platform. While FaceTec is correct that it need not disclose specific evidence nor prove its case at this stage, it "must nevertheless disclose what in each accused instrumentality it contends practices each and every limitation of each asserted claim to the extent appropriate information is reasonably available to it." *DCG Sys. v. Checkpoint Techs., LLC*, No. 11-cv-03792-PSG, 2012 WL 1309161, at *2 (N.D. Cal. Apr. 16, 2012). Showing pictures of phones/tablets, or stating the word "smartphone," is not enough to show how the mobile platforms allegedly infringe *each and every* limitation of FaceTec's patent. Putting aside the representative-products rule, discussed below, FaceTec cannot show that the mobile platforms allegedly infringe its patent by only referencing features specific to the web platform (e.g., the WebM payload) because using a feature specific to the web platform cannot show how the mobile platforms allegedly infringe that limitation of the patent. Therefore, FaceTec has not given iProov sufficient notice of the mobile platforms as required by LPR 1-6(a).

///

///

---

[4] iProov further contends that FaceTec's argument surrounding the use of "hand-held" devices fails because this argument only applies to dependent claims, and a product cannot infringe a dependent claim unless it infringes the broader independent claim. ECF No. 98 at 11. Because the Court finds that FaceTec's preliminary infringement contentions did not give iProov sufficient notice of its infringement theory regarding the mobile platforms on a different ground, it need not address this argument further.

**C. The web platform of Liveness Assurance is representative of the mobile platforms.**

The second issue before the Court is whether FaceTec has nonetheless accused the mobile platforms of Liveness Assurance through the web platform. Plaintiffs are not required to chart every single accused instrumentality; instead, they may use representative claim charts. *Uniloc USA Inc. v. LG Elecs. USA Inc.,* No. 18:CV-06738-LHK-SVK, 2019 WL 8809732, at *2 (N.D. Cal. Apr. 4, 2019). A plaintiff can rely on representative products to meet its obligations under the LPRs. *Tech. Props. Ltd. LLC v. Canon Inc.*, No. 14-3646-CW (DMR), 2015 WL 5118687, at *3 (N.D. Cal. Aug. 31, 2015). If it goes this route, the plaintiff must "articulate how the accused products share the same, or substantially the same, infringing qualities with [the] . . . representative product." *Silicon Labs. Inc. v. Cresta Tech. Corp.*, No. 5:14–cv–03227–PSG, 2015 WL 846679, at *1, 2 (N.D. Cal. Feb. 25, 2015) (quoting *Bender v. Freescale Semiconductor, Inc.*, Case No. 09–cv–01156, 2010 WL 1689465, at *3 (N.D. Cal. Apr. 26, 2010)) (cleaned up). In other words, the plaintiff must give an "adequate analysis showing that the accused products share the same critical characteristics." *Geovector Corp. v. Samsung Elecs. Co.*, No. 16-CV-02463-WHO, 2017 WL 76950, at *5 (N.D. Cal. Jan. 9, 2017) (quoting *Network Prot. Scis., LLC v. Fortinet, Inc.*, No. 12-C-01106-WHA, 2013 WL 5402089, at *3 (N.D. Cal. Sept. 26, 2013)). The plaintiff cannot merely state that the accused product is representative of others. *Uniloc 2017 LLC v. Apple, Inc.*, No. 19-CV-01929-EJD-VKD, 2020 WL 978678 (N.D. Cal. Feb. 28, 2020). Crucially, product differences do not matter if they are irrelevant to the infringement contentions. *Infineon Techs. AG v. Volterra Semiconductor*, No. C-11-06239 MMC (DMR), 2013 WL 5366131, at *5 (N.D. Cal. July 31, 2013).

FaceTec generally argues that "even if [it] had charted only the web browser version of Liveness Assurance, that would be sufficient, because the mobile versions infringe in the same way." ECF 107 at 6. It contends that the versions are representative because both products operate in the same three-step manner, as explained by Mr. Tussy in his declaration. ECF No. 108-1 at 1–2, 12, 14; *see also* ECF No. 89-9 (Tussy Declaration). FaceTec further contends that the differences identified by iProov are irrelevant to its infringement claims "because infringement of

FaceTec's asserted claims does not depend on the methods used to encode data or the use of landscape/portrait camera views." ECF No. 108-1 at 13 (cleaned up).

iProov argues that the web platform of Liveness Assurance is not representative of the mobile platforms because they operate differently by (a) offsetting the user's face in different axes; (b) using different encoding formats; and (c) orienting pictures differently. ECF No. 99-1 at 1–2 (Forrest Declaration). Based on these differences, iProov argues that the web platform cannot be representative of the mobile platforms because these platforms do not share the same critical characteristics. ECF No. 98 at 9–10. Moreover, iProov argues that it is FaceTec's burden to explain how the accused product is representative of others, and it has not done so because Mr. Tussy's declaration contains no evidence and is mere "say-so." *Id.*

Here, FaceTec has adequately shown that the web platform is representative of the mobile platforms.[5] As an initial matter, the Court disagrees with iProov that FaceTec's silence in its preliminary infringement contentions as to how the platforms are representative is fatal to its claims. *See* ECF 98 at 9. In the case iProov cites for this proposition, the court did not just look at the plaintiff's infringement contentions. *See Uniloc 2017 LLC v. Apple, Inc.*, No. 19-CV-01929-EJD-VKD, 2020 WL 978678, at *3 (N.D. Cal. Feb. 28, 2020). Instead, it considered arguments made in the plaintiff's opposition briefing and at the hearing, and relied on those arguments to find that the explanation regarding representative products was insufficient. *Id.*; *see also Cap Co. v. McAfee, Inc.*, No. 14-CV-05068-JD, 2015 WL 4734951, at *2 (N.D. Cal. Aug. 10, 2015) ("CAP points to no such analysis in its contentions, or even in its opposition."). So, the Court considers the arguments FaceTec made in its briefings.

Given the briefings, including the declarations of Mr. Tussy, the Court finds that FaceTec has adequately analyzed how the web and mobile platforms share the same critical characteristics and why the differences between the platforms are irrelevant to the infringement claims. *See Geovector Corp. v. Samsung Elecs. Co.*, No. 16-CV-02463-WHO, 2017 WL 76950, at *5 (N.D.

---

[5] Even if the Court were to find that the platforms were not representative, it would still grant FaceTec leave to amend.

Cal. Jan. 9, 2017); *see also Infineon Techs. AG v. Volterra Semiconductor*, No. C-11-06239 MMC (DMR), 2013 WL 5366131, at *5 (N.D. Cal. July 31, 2013).

For example, in his first declaration, Mr. Tussy stated that the web and mobile platforms share the same critical characteristics of:

> (1) prompting a user to position their face at more than one distance from a user's device's front-facing camera; (2) collecting face-image data of the user from at least two distances between the user's face and the device's camera, and (3) utilizing this data collected from at least two different distances to confirm the three-dimensionality of the user seeking verification.

ECF No. 89-9 at 2 (cleaned up). He further clarified that the Liveness Assurance software operates this way on desktop computers and iOS and Android operating systems. *Id.* Moreover, FaceTec collectively spends over twenty pages explaining why the web and mobile platforms share the same critical characteristics and why the differences cited by iProov are irrelevant to FaceTec's infringement claims. ECF No. 107-1 at 7–16; ECF No. 107-14 at 3–10; ECF No. 108-1 at 8–10; ECF No. 89-9 at 2. These explanations were based on review and testing of Liveness Assurance on web browsers and mobile device applications. ECF No. 107-14 at 3–4. They are thorough and contain numerous photographs of the software operating on computers and mobile devices, materials from iProov's website, and references to claim-limitation language from FaceTec's patents to describe why a particular difference is not relevant to the patent claim. ECF No. 107-1 at 7–16; ECF No. 107-14 at 3–10; ECF No. 108-1 at 8–10; ECF No. 89-9 at 2.[6] To be clear, FaceTec should have included such explanations in its infringement contentions to avoid the time and resources spent by both the parties and the Court in resolving this issue. Still, the Court finds that FaceTec adequately articulated how the web and mobile platforms share the same critical characteristics, explained above, and why the two differences between the platforms are irrelevant to its infringement contentions, discussed below.

---

[6] *See Infineon Techs. AG v. Volterra Semiconductor*, No. C-11-06239 MMC (DMR), 2013 WL 5366131, at *4 (N.D. Cal. July 31, 2013) (finding that the plaintiff adequately explained why one product was representative of others by providing nearly 50 pages of supporting analysis based on reverse engineering, photographs of the products, and materials from the defendant's website).

First, regarding the differences in orientations and axes,[7] FaceTec argues that these differences are irrelevant to its infringement contentions because the "patent claim says nothing about [them]." ECF No. 107-1 at 10. It explains that the typical use of landscape orientation on computers and portrait orientation on mobile devices is just a common interface design. *Id.* at 11. iProov argues that these differences are material because the claim limitation covers moving forwards and backwards along the Z axis. ECF No. 113 at 5–6. It explains that, in landscape orientation, the user's face is shown primarily offset in the X axis, and the software prompts the user to move side to side along the X axis. *Id.* It further explains that, in portrait orientation the user's face is primarily offset in the Z axis. ECF No. 99-1 at 1–2.

FaceTec contends that whether the user is primarily offset in the Z axis or X axis is irrelevant because the claim limitations "simply require that one or more images of the user be captured by a camera at a first distance from the user and that one or more images of the user also be captured by a camera at a second distance from the user." ECF No. 107-1 at 13–14. As Mr. Tussy explains, on the web platform the user moves along both the X *and* Z axis, and sometimes, the user moves more in the X axis than in the Z axis. *Id.* at 16. He explains that this is irrelevant because the claim limitations merely require some movement along the Z axis. *Id.* at 16–17.

It is critical to define what the difference between the axes/orientations is to then determine whether that difference is relevant to FaceTec's infringement contentions. As the Court understands it, the difference is that, in the web platform, the user primarily moves side to side along the X axis due to the web platform's landscape orientation. In the mobile platforms, the user primarily moves backwards and forwards along the Z axis due to the mobile platforms' portrait orientation. To be clear, iProov does not state that the user *only* moves side to side in the web platform. It states that the user *primarily* does so. ECF No. 113 at 5–7. Pictures in Exhibit A to FaceTec's amended infringement contentions support this understanding because they show

---

[7] The Court finds that the alleged differences regarding orientation and axes are interconnected and considers them together.

users moving backward and forward (along the Z axis) in landscape orientation. ECF No. 89-6, Ex. A, at 3, 17.

The claim limitation language requires that at least two images be taken at different distances, which necessitates *some* movement along the Z axis. *Id.* at 2, 6. The claim limitations says nothing about how the user needs to *primarily* move backward and forward on the Z axis. Nor does iProov argue as much. So, the fact that the user primarily moves side to side along the X axis (in landscape orientation) versus backward and forward along the Z axis (in portrait orientation) is irrelevant to the infringement claims. Moreover, the web and mobile platforms share the critical characteristic of moving forward and backward along the Z axis so that images can be captured at least at two distances in accordance with the claim limitation.

Second, regarding the difference in encoding formats, iProov argues that this difference is relevant to FaceTec's infringement contentions because the encoding formats process data in different ways. ECF No. 113 at 6. iProov explains that the claim limitations require extracting data from two images and then processing that data to determine if the user is three-dimensional. *Id.* iProov further explains that the VP8/VP9 encoding format (web platform) is "lossless," meaning that no data is lost during processing, and that the H264/H265 encoding format (mobile platforms) is "lossy," meaning that some data is lost during processing. *Id.* Therefore, iProov argues that the difference in "lossyness" between the encoding formats is relevant to the infringement contentions because the web and mobile platforms process the data in different ways. *Id.* FaceTec disagrees and argues that the difference in "lossyness" between the two encoding formats is irrelevant to its infringement contentions because the claim limitations "do not include any requirements related to image encoding or transmission formats." ECF No. 107-1 at 12. Put differently, FaceTec argues that the encoding-format difference is irrelevant because the claim limitations do not require a certain lossyness when processing. *Id.* at 13.

Here, the Court agrees with FaceTec that the difference in lossyness when processing data is not relevant to FaceTec's infringement contentions. The claim-limitation language merely requires "processing" of the first and second images to create first and second data so that the software can compare the two data sets to determine if the user is three-dimensional. ECF No. 89-

6, Ex. A, at 3, 9, 12. The patent language does not limit such "processing" of the data to a specific encoding format or require a certain lossyness. Therefore, this difference is irrelevant to the infringement contentions because both the web and mobile platforms allegedly "process" data from the first and second images to determine if the user is three-dimensional, in accordance with the claim limitation language.

Relying on *Uniloc 2017 LLC v. Apple, Inc.*, iProov separately argues that the web platform cannot be representative of the mobile platforms because "differences between operating systems are material and important." No. 19-CV-01929-EJD-VKD, 2020 WL 978678, at *9 (N.D. Cal. Feb. 28, 2020); ECF No. 99 at 8. However, the Court does not read this case as stating that products using different operating systems can never be representative because this difference is material. Such an interpretation would frustrate the rule that differences between products must be relevant to the infringement contentions. *See Infineon Techs. AG v. Volterra Semiconductor*, No. C-11-06239 MMC (DMR), 2013 WL 5366131, at *5 (N.D. Cal. July 31, 2013) ("The existence of product differences does not necessarily affect the question of whether a product is representative of others. The differences must be relevant to the infringement contentions."). While the difference in operating systems may be material in the *Uniloc* case, here, the difference is not material because it is irrelevant to the claim-limitation language in FaceTec's patents, as discussed above.

**D. The Court compels iProov to produce the source code of Liveness Assurance on mobile platforms under LPR 1-9(a).**

Under LPR 1-9, a defendant must produce the source code of an accused instrumentality "identified by the patent claimant in its LPR 1-6(c) chart." LPR 1-9(a). The Court understands this obligation to include uncharted but represented products because these products are still "identified" via representative claim charts. *See Tech. Properties Ltd. LLC v. Samsung Elecs. Co.*, 114 F. Supp. 3d 842, 845 (N.D. Cal. 2015) (stating that Patent Local Rule 3-4(a), which shares the same language as LPR 1-9(a), requires a defendant to produce source code once the plaintiff has served "adequate charts," and suggesting that "adequate charts" includes representative charts); *see also Pelican Int'l, Inc. v. Hobie Cat Co.*, No. 3:20-CV-02390-RSH-MSB, 2023 WL

2127995, at *4 (S.D. Cal. Feb. 10, 2023) ("A district court has wide discretion in enforcing the Patent Local Rules.") (internal quotations omitted). Practically speaking, if a plaintiff could not receive source code for uncharted but represented products, then it would frustrate the representative-products rule because plaintiffs would need to chart every single product to obtain LPR 1-9(a) discovery on them.

Moreover, the Court disagrees with iProov's argument that "LPR 1-9(a) explicitly limits discovery of source code to accused instrumentalities 'identified by the patent claimant in its LPR 1-6(c) chart.'" ECF No. 98 at 15. iProov's view contradicts the approach taken in this district that the scope of discovery includes *nonaccused* products that are reasonably similar to those accused in the infringement contentions. *JS Products, Inc. v. Kabo Tool Co.*, No. 2:11-cv-01856-RCJ-GWF, 2012 WL 5288175, at *5 (D. Nev. Oct. 23, 2012); *Hologram USA, Inc. v. Pulse Evolution Corp.*, No. 2:14-CV-0772-GMN-NJK, 2015 WL 13238450, at *2 (D. Nev. Dec. 18, 2015) ("So far, courts in this District of Nevada have endorsed this view."). This approach is premised on the idea that "the general contours of a desire for broad discovery [under Federal Rule of Civil Procedure 26(b)] apply as much in patent cases as in any other." *JS Products*, 2012 WL 5288175, at *5 (D. Nev. Oct. 23, 2012).

In sum, because the Court found that FaceTec accused the mobile platforms of Liveness Assurance through the representative, web-platform claim charts, the Court compels iProov to produce the source code of the mobile platforms of Liveness Assurance under LPR 1-9(a).

**III.   MOTION TO STRIKE**

iProov generally argues that the Court should strike FaceTec's definition of "Accused Instrumentalities" because it encompasses the mobile platforms of Liveness Assurance that FaceTec did not properly accuse in its preliminary infringement contentions. ECF No. 99 at 1. iProov moves this Court to limit "Accused Instrumentalities" to the web platform of Liveness Assurance only. *Id.* at 13. Because the Court finds that FaceTec did accuse the mobile platforms of Liveness Assurance, discussed above, it denies iProov's motion to strike.

/ / /

/ / /

IV.   CONCLUSION

IT IS THEREFORE ORDERED that FaceTec's motion to compel (ECF No. 89) is GRANTED.

IT IS FURTHER ORDERED that iProov's motion to strike (ECF No. 99) is DENIED.

DATED: September 10, 2024

_____
BRENDA WEKSLER
UNITED STATES MAGISTRATE JUDGE