# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

| | | |
|---|---|---|
| FaceTec, Inc., | | Case No. 2:21-cv-02252-ART-BNW |
| | Plaintiff, | |
| v. | | **AMENDED ORDER** |
| iProov, Ltd., | | |
| | Defendant. | |
| iProov, Ltd., | | |
| | Counter-Claimant, | |
| v. | | |
| FaceTec, Inc., | | |
| | Counter-Defendant. | |

This is a patent dispute over facial-recognition software in which both companies assert patent-infringement claims against the other. Plaintiff FaceTec moves to compel Defendant iProov to produce discovery based on FaceTec's infringement contentions. ECF No. 89. iProov opposes and moves the Court to strike, in part, those contentions. ECF No. 99.

This Court previously issued an order granting FaceTec's motion to compel and denying iProov's motion to strike. ECF No. 122. Having considered iProov's objections (ECF No. 126) to the prior order, FaceTec's response (ECF No. 129), and the parties' surreplies (ECF Nos. 134 and 137-1), the Court construes iProov's objections as a motion to reconsider and issues the following amended order. Because the Court finds that FaceTec has not accused the mobile platform of Liveness Assurance under Local Patent Rule 1-6, it grants iProov's motion to strike. However, the Court also gives FaceTec leave to amend its infringement contentions and thus denies FaceTec's motion to compel without prejudice. Finally, the Court strikes its prior order.

## I. BACKGROUND

iProov is the developer and patent owner of Liveness Assurance, which is a software that verifies whether an online user is real and the right person to access sensitive information through facial-recognition technology. ECF No. 99 at 2. FaceTec alleges that this software infringes its two patents. ECF No. 98 at 3. This amended order only concerns motions relating to FaceTec's, not iProov's, infringement claims.

In August of 2022, FaceTec served its preliminary infringement contentions, in which it defined the accused instrumentalities as all iProov products that included the Liveness Assurance software. ECF 89 at 3. iProov asked FaceTec to supplement its contentions because it believed that they did not show infringement of any accused instrumentality. ECF No. 98 at 4. The parties conferred, and FaceTec agreed to amend its preliminary infringement contentions to include more details about its infringement allegations. *Id.*; ECF No. 89 at 3. In July of 2023, FaceTec served its amended infringement contentions, which contained the same definition of accused instrumentalities as its prior contentions but added more information to its claim charts. ECF No. 89 at 4.

iProov argues that the information FaceTec added to its amended claim charts were specific to the web platform of Liveness Assurance, and therefore, only accused the web platform. ECF No. 98 at 4. Conversely, FaceTec argues that it accused both the web and mobile platforms in its amended infringement contentions. ECF No. 89 at 3. The parties' differing views on this issue did not surface until approximately eight months later, when FaceTec requested that iProov produce the source code of the mobile platform of Liveness Assurance. *Id.* at 4. iProov refused to do so because it believed that FaceTec had not accused the mobile platform. *Id.* Accordingly, FaceTec filed a motion to compel, in which it moved the Court to find that it had accused the mobile platform and to compel iProov to produce the related source code. ECF No. 89. Subsequently, iProov filed a motion to strike, in which it sought an order from the Court limiting FaceTec's accused instrumentalities to the web platform of Liveness Assurance only. ECF No. 99.

On September 10, 2024, this Court issued an order on the two motions. ECF No. 122. This Court found that FaceTec had accused the mobile platform of Liveness Assurance through the representative-product rule, which allows a plaintiff to accuse a product by articulating how it (here, the mobile platform) shares the same, or substantially the same, infringing qualities as an accused product (here, the web platform). *Id.* at 7. Given the caselaw and argument before it, the Court found that FaceTec articulated how the accused web platform was representative of the mobile platform outside of its preliminary infringement contentions (i.e., in its briefings before the Court). *Id.* at 8. This Court therefore determined that FaceTec had properly accused the mobile platform through its representative-product analysis.

iProov objected to the order, and primarily argued that this Court erred in looking beyond the preliminary infringement contentions to find that the web platform was representative of the mobile platform. ECF No. 126 at 8. In its objection, iProov cited non-binding authority that directly supported its argument that a plaintiff's representative-product analysis must be contained in its infringement contentions. *Id.* at 10. Because this Court is persuaded by iProov's argument and newly cited caselaw, as explained below, it issues the following amended order.[1]

## II.  MOTION TO STRIKE

### A. FaceTec's infringement contentions do not comply with LPR 1-6.

iProov moves the Court to strike FaceTec's definition of accused instrumentalities. ECF No. 99 at 13. iProov further requests that the Court enter an order limiting the definition to the web platform of Liveness Assurance only. *Id.* In support of this request, iProov argues that FaceTec did not accuse the mobile platform in accordance with this district's local patent rules. *Id.* at 4–12.

This district's Local Rules of Practice for Patent Cases ("Local Patent Rules" or "LPR") set forth a series of disclosures that each party must make in a patent case. *See generally* LPRs. As part of these disclosures, a party claiming patent infringement must serve infringement

---

[1] This Court does not address iProov's objection regarding claim construction (ECF No. 126 at 13–17) because this Court strikes its prior order, thereby mooting the claim-construction objection.

contentions, which include a claim chart or charts that specifically identify how the accused instrumentalities allegedly infringe each limitation of each patent. LPR 1-6(c). LPR 1-6 states that the preliminary infringement contentions must contain:

> Separately for each asserted claim, each accused apparatus, product, device, process, method, act, or other instrumentality ("Accused Instrumentality") of each opposing party of which the party is aware. This identification must be as specific as possible. Each product, device, and apparatus must be identified by name or model number, if known. Each method or process must be identified by name, if known, or by any product, device, or apparatus which, when used, allegedly results in the practice of the claimed method or process. . . . [And a] chart identifying specifically where each limitation of each asserted claim is found within each Accused Instrumentality . . .

LPR 1-6(b)–(c).

"All courts agree that the degree of specificity under [LPR 1-6] must be sufficient to provide reasonable notice to the defendant why the plaintiff believes it has a reasonable chance of proving infringement." *Geovector Corp. v. Samsung Elecs. Co.*, No. 16-CV-02463-WHO, 2017 WL 76950, at *3 (N.D. Cal. Jan. 9, 2017) (quoting *Shared Memory Graphics LLC v. Apple, Inc.* 812 F. Supp 2d 1022, 1025 (N.D. Cal. 2010)) (cleaned up).[2] The Federal Circuit described this notice requirement as putting "the opposing party and the court on notice of plaintiff's position as to 'where each element of each infringed claim is found within the accused device.'" *Golden v. United States*, 156 Fed. Cl. 623 (2021), *aff'd*, No. 2022-1196, 2022 WL 4103287 (Fed. Cir. Sept. 8, 2022) (quoting *Iris Corp. Berhad v. United States*, 84 Fed. Cl. 12, 16 (2008)).

Plaintiffs may show "where each limitation of each asserted claim is found within each [accused product]" through a claim chart. *See* LPR 1-6(c). Claim charts describe how the product at issue operates in a way that infringes each limitation (or element)[3] of a patent. Though a

---

[2] The Court finds opinions from the Northern and Southern District Courts of California persuasive because the Local Patent Rules relevant to this Order (e.g., LPR 1-6, LPR 1-12) are nearly identical to the patent rules in those districts (e.g., Patent Local Rules 3.1, 3-1, 3.6, 3-6). *See, e.g., Signify N. Am. Corp. v. Lepro Innovation Inc.*, 2:22-cv-02095-JAD-DJA, at *3 n.7 (D. Nev. Oct. 5, 2023) ("The local patent rules for the District of Nevada are similar to those in the Northern District of California, so I consider opinions by courts in those districts persuasive.").

[3] Elements have the same meaning as limitations but are used in reference to accused products. "In our prior cases, we have used both the term 'element' and the term 'limitation' to refer to words in a claim. It is preferable to use the term 'limitation' when referring to claim language and the term 'element' when referring to the accused device." *Festo v. Shoketsu*, 234 F.3d 558, 563 n.1 (Fed. Cir. 2000) (en banc).

1  plaintiff need not disclose specific evidence nor prove its case at this stage, it must explain how
2  the product infringes each limitation to the extent information is reasonably available to it. *DCG*
3  *Sys. v. Checkpoint Techs., LLC*, No. 11-CV-03792-PSG, 2012 WL 1309161, at *2 (N.D. Cal.
4  Apr. 16, 2012).

        1. *FaceTec's infringement contentions did not give iProov sufficient notice under LPR 1-6(a) that it was accusing the mobile platform.*

6        iProov argues that it does not have sufficient notice of FaceTec's infringement theories as
7  to the mobile platform of Liveness Assurance because FaceTec did not chart the mobile platform.
8  *See* ECF No. 113 at 2–7. FaceTec disagrees. ECF No. 107-1 at 5–6. It argues that its infringement
9  contentions gave iProov notice that it was accusing the mobile platforms of Liveness Assurance
10 because it defined "Accused Instrumentalities" as "all [iProov] products that contain . . .
11 'Liveness Assurance™' technology." ECF No. 89 at 8–10. FaceTec further argues that it charted
12 the mobile platform because its claim charts include information specific to the mobile platform,
13 such as pictures of tablets/phones and language like "hand-held device" or "a camera-equipped
14 smartphone, computer, or tablet." *Id.* at 9–11; ECF No. 89-6 at 13. But iProov contends that the
15 pictures and language regarding phones/tablets and "hand-held devices" [4] do not give it notice of
16 the mobile platforms because the web platform can be used on phones/tablets and because a
17 plaintiff cannot satisfy the Local Patent Rules by "mixing and matching between different
18 accused products." ECF No. 98 at 11 (quoting *Geovector Corp. v. Samsung Elecs. Co.*, No. 16-
19 CV-02463-WHO, 2017 WL 76950, at *11 (N.D. Cal. Jan. 9, 2017)).

20        Here, while FaceTec's broad definition of accused instrumentalities might encompass the
21 mobile platform, the lack of a specific analysis as to how the mobile platform infringed deprived
22 iProov of the notice required under LPR 1-6. FaceTec is correct that it need not disclose specific
23 evidence nor prove its case at this stage, however, it "must nevertheless disclose what in each
24 accused instrumentality it contends practices each and every limitation of each asserted claim to

---

[4] iProov further contends that FaceTec's argument surrounding the use of "hand-held" devices fails because this argument only applies to dependent claims, and a product cannot infringe a dependent claim unless it infringes the broader independent claim. ECF No. 98 at 11. Because the Court finds that FaceTec's preliminary infringement contentions did not give iProov sufficient notice of its infringement theory regarding the mobile platforms on a different ground, it need not address this argument further.

the extent appropriate information is reasonably available to it." *DCG Sys. v. Checkpoint Techs., LLC*, No. 11-cv-03792-PSG, 2012 WL 1309161, at *2 (N.D. Cal. Apr. 16, 2012). FaceTec's contentions fail to meet this standard because they did not explain how the mobile platform infringed each limitation of the asserted patents. FaceTec cannot show that the mobile platform allegedly infringes its patent by only referencing features specific to the web platform (e.g., the WebM payload). Showing pictures of phones/tablets, or stating the word "smartphone," is not enough to show how the mobile platforms allegedly infringe *each and every* limitation of FaceTec's patent. *See id.* Therefore, FaceTec has not given iProov reasonable notice of the mobile platform as required by LPR 1-6(a).

2. *FaceTec's infringement contentions did not show how the web platform was representative of the mobile platform.*

In the alternative, FaceTec argues that "even if [it] had charted only the web browser version of Liveness Assurance, that would be sufficient, because the mobile versions infringe in the same way." ECF 107 at 6. Put differently, FaceTec argues that the web platform is representative of the mobile platform. *See id.* In its briefings, FaceTec contends that the platforms are representative because both products operate in the same three-step manner, as explained by Mr. Tussy in his declaration. ECF No. 108-1 at 1–2, 12, 14; *see also* ECF No. 89-9 (Tussy Declaration).

iProov argues that representative-product analysis must be contained in the infringement contentions. ECF No. 126 at 8. In support of this argument, iProov points to a persuasive case from the district court for the Northern District of California, discussed below. *Id.* at 8, 10–11. iProov argues that FaceTec has not accused the mobile platform because its explanation of how the platform is representative is not in its infringement contentions.

LPR 1-6(c) requires a plaintiff's infringement contentions to contain a "chart identifying specifically where each limitation of each asserted claim is found within each Accused Instrumentality." However, a plaintiff is not required to chart each accused instrumentality; instead, it may use representative claim charts to meet its obligations under the Local Patent Rules. *Uniloc USA Inc. v. LG Elecs. USA Inc.*, No. 18:CV-06738-LHK-SVK, 2019 WL 8809732, at *2 (N.D. Cal. Apr. 4, 2019); *Tech. Props. Ltd. LLC v. Canon Inc.*, No. 14-3646-CW (DMR),

2015 WL 5118687, at *3 (N.D. Cal. Aug. 31, 2015). If the plaintiff goes this route, it must "articulate how the accused products share the same, or substantially the same, infringing qualities with [the] . . . representative product." *Silicon Labs. Inc. v. Cresta Tech. Corp.*, No. 5:14–cv–03227–PSG, 2015 WL 846679, at *1, 2 (N.D. Cal. Feb. 25, 2015) (quoting *Bender v. Freescale Semiconductor, Inc.*, Case No. 09–cv–01156, 2010 WL 1689465, at *3 (N.D. Cal. Apr. 26, 2010)) (cleaned up). This representative-product analysis must be contained in the infringement contentions themselves. *See Finjan, Inc. v. Proofpoint, Inc.*, No. 13-CV-05808-HSG, 2015 WL 1517920, at *5 (N.D. Cal. Apr. 2, 2015).

*Finjan, Inc. v. Proofpoint, Inc.*, an opinion by the district court for the Northern District of California, illustrates the point that representative-product analysis must be included in the infringement contentions (as opposed to supplemental briefing). *Id.* In that case, the court considered whether a plaintiff's infringement contentions complied with the local patent rules when it named numerous products in its definition of "Proofpoint Products" and "Armorize Products" but only provided one chart per product group. *Id.* at *7–8. In finding that the infringement contentions did not comply with the local patent rules, the court was unpersuaded by the plaintiff's argument that the products were representative. *Id.* at *14. The court reasoned that any explanation justifying the deficient contentions, such as representative-product analysis, "should have been provided in [the] infringement contentions." *Id.* The court went on to state that "Finjan may not serve infringement contentions as required by the Patent Local Rules and then informally supplement them after the fact (either through correspondence with Defendants or through briefing to the Court)." *Id.*

Similarly here, FaceTec's infringement contentions, in which it defined Liveness Assurance broadly but did not chart the mobile platform, do not comply with the Local Patent Rules. While FaceTec did explain how the web platform was representative of the mobile platform, it did so in its briefings regarding the motion to compel and motion strike. Because such analysis was absent from its infringement contentions, the contentions did not give iProov notice as to "where each element of each infringed claim is found within the accused device." *Iris Corp.*

1  *Berhad v. United States*, 84 Fed. Cl. 12, 16 (2008). Therefore, the Court finds *Finjan* persuasive
2  and reaches the same result here.
3        Moreover, the purpose behind the Local Patent Rules supports the notion that
4  representative-product analysis must be contained in the infringement contentions as opposed to
5  later briefings. The Local Patent Rules are designed to "require parties to crystallize their theories
6  of the case early in the litigation and to adhere to those theories once they have been disclosed."
7  *Aim High Inv. Grp., LLC v. Spectrum Lab'ys, LLC*, No. 2:22-CV-00158-GMN-DJA, 2023 WL
8  4296184, at *2 (D. Nev. June 30, 2023) (quoting *Power Probe Group, Inc. v. Innova Elecs.*
9  *Corp.*, No. 2:21-cv-00332-GMN-EJY, 2021 WL 5280651, at *1 (D. Nev. Nov. 12, 2021)). This
10 early disclosure "provide[s] structure to discovery and enable[s] the parties to move efficiently
11 toward claim construction and the eventual resolution of their dispute." *Creagri, Inc. v. Pinnaclife*
12 *Inc., LLC*, No. 11-cv-6635-LHK-PSG, 2012 WL 5389775, at *2 (N.D. Cal. Nov. 2, 2012).
13 Permitting plaintiffs to produce representative-product analysis in later briefings as opposed to in
14 their infringement contentions would not support the early disclosure and crystallization of a
15 plaintiff's case theories.
16       In sum, the lack of a specific analysis of how the mobile platform infringed, or how it was
17 representative of the charted web platform, within the infringement contentions themselves,
18 deprived iProov of the notice required under LPR 1-6. Accordingly, the Court grants iProov's
19 motion to strike without prejudice. However, for the reasons discussed below, the Court also
20 grants FaceTec leave to amend its infringement contentions.

21                **B.  FaceTec may amend its infringement contentions.**

22       FaceTec requests leave to amend its infringement contentions should the Court find any
23 deficiencies. ECF No. 107-1 at 18. In support of its request, FaceTec argues that this Court should
24 treat iProov's motion to strike as a motion to compel amendment. *Id.* District courts in the
25 Northern District of California frequently treat motions to strike initial infringement contentions
26 as motions to compel their amendment. *Droplets, Inc. v. Yahoo! Inc.*, No. 4:12-cv-03733-JST-
27 KAW, 2020 WL 4045211, at *3 (N.D. Cal. May 6, 2020). "While some courts have required a
28 party asserting infringement to show good cause before granting leave to amend initial

contentions, many have simply compelled the asserting party to serve compliant infringement contentions." *Id.* at *3.

Indeed, in *Technology Properties Limited LLC v. Samsung Electronics Company Limited*, the district court for the Northern District of California compelled the plaintiffs to amend their infringement contentions after finding that the contentions were deficient under the local patent rules. 114 F. Supp. 3d 842, 844 (N.D. Cal. 2015). Before the court were the plaintiffs' motion to compel discovery arising from its infringement contentions and the defendants' related motion to strike those infringement contentions. *Id.* In examining whether the plaintiffs' infringement contentions complied with the local patent rules, the court found that they did not because (1) the contentions did not chart each product individually on a limitation-by-limitation basis; and (2) the plaintiffs did not sufficiently allege how the charted products were representative of the uncharted products. *Id.* at 858–49. The court went on: "As for what exactly to do about [the deficient infringement contentions], while Defendants argue they will be unfairly prejudiced if Plaintiffs are allowed to amend beyond the seven or eight charted processors, the court is persuaded that a nondispositive order requiring supplementation strikes the right balance." *Id.* at 851.

Similarly here, FaceTec did not sufficiently chart the mobile platform or allege how the platforms were representative in its infringement contentions. And like the defendants in *Technology Properties*, iProov argues that it will be unfairly prejudiced if FaceTec is permitted to amend its infringement contentions beyond the web platform of Liveness Assurance. Given the analogous facts of *Technology Properties*,[5] this Court finds the case persuasive and reaches the same result here. The Court construes iProov's motion to strike as a motion to compel amendment, and it grants FaceTec leave to amend.

The Court also believes that good cause exists for FaceTec to amend its infringement contentions. Under this district's Local Patent Rules, parties may amend their infringement

---

[5] iProov agrees that the facts of this case are analogous. At the hearing before the undersigned, iProov cited this case and stated that "the posture was the same as it is in this case." ECF No. 116, 37:17–24, 39:2–3.

contentions upon a showing of good cause. LPR 1-12.[6] Good cause requires a showing of diligence, and the moving party bears the burden to establish this diligence. *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366 (Fed. Cir. 2006). If the court finds good cause and diligence, it then considers whether the nonmoving party would be unfairly prejudiced by "'eleventh-hour alterations.'" *See Silver State Intell. Techs., Inc. v. Garmin Int'l, Inc.*, 32 F. Supp. 3d 1155, 1162 (D. Nev. 2014) (quoting *Finisar Corp. v. DirecTV Group, Inc.*, 424 F.Supp.2d 896, 900 (E.D. Tex. 2006)). Courts have discretion to enforce the Local Patent Rules. *Id.*

Here, FaceTec has demonstrated good cause and diligence because it promptly sought relief from this Court, or alternatively, leave to amend, upon realizing that its infringement contentions may be insufficient. FaceTec argues that its contentions accused both the mobile and web platforms of Liveness Assurance because it defined accused instrumentalities as all products that contain Liveness Assurance Technology and because its claim charts reference both the web and mobile platforms. ECF No. 89 at 8–9. FaceTec had a valid basis for believing that it had properly accused the mobile platform based on the parties' discussions in this case. When FaceTec served its first infringement contentions, iProov requested supplementation, claiming no product was accused. ECF No. 98 at 4. After FaceTec amended its infringement contentions, iProov was silent. ECF No. 89 at 4.

FaceTec did not realize that its infringement contentions may not have properly accused the mobile platform until March 20, 2024, when it sought discovery related to that platform. *Id.* at 4. The parties conferred on April 11, 2024, but did not resolve the issue. *Id.* Consequently, FaceTec filed its motion to compel on April 19, 2024—approximately one month after iProov declined to produce the source code and eight days after the meet and confer. *See id.*

Furthermore, amendment will not unduly prejudice iProov with "eleventh-hour alternations." *See Silver State Intell. Techs., Inc.*, 32 F. Supp. 3d at 1162 (quoting *Finisar Corp*,

---

[6] LPR 1-12 provides "[n]on-exhaustive examples" of circumstances that may, but do not necessarily, constitute good cause. To be clear, these examples do not limit the ways in which a party may establish good cause. FaceTec need not demonstrate that one of the circumstances identified in the rule applies here to meet its burden.

424 F. Supp. 2d at 900). iProov contends that it will be unduly prejudiced because it will need to supplement its claim construction arguments and invalidity contentions. ECF No. 113 at 9. But courts have found that merely being in the claim-construction phase does not bar amendment, particularly where there is sufficient time to conduct discovery on the amendments. *See, e.g., Signify N. Am. Corp. v. Lepro Innovation Inc.*, No. 2:22-CV-02095-JAD-DJA, 2023 WL 6517595, at *3 (D. Nev. Oct. 5, 2023); *see also Sunlighten, Inc. v. Finnmark Designs, Inc.*, No. 2:20-CV-00127-JAD-EJY, 2021 WL 12305949, at *4 (D. Nev. May 7, 2021) (declining to find prejudice "when there was still time left in the discovery period and before claim construction ha[d] been settled."). Moreover, if, after receiving FaceTec's second-amended infringement contentions, iProov believes it needs to supplement its invalidity contentions, the Court gives iProov leave to do so. *See* LPR 1-12(a).[7]

Here, the Court has not held a claim-construction hearing nor issued its claim-construction order. Discovery has not closed. The scheduling order in this case provides that discovery will close 45 days after the claim-construction order. ECF No. 37 at 3. Expert discovery and reports have not begun. *See id.* (stating that opening expert reports are due 75 days after the claim-construction order and expert discovery closes 45 days after rebuttal-expert reports). *Id.* Additionally, FaceTec states that discovery is at an early stage. ECF No. 129 at 15. According to FaceTec, as of October 8, 2024, iProov had only taken one deposition, had not yet collected and produced electronic documents, and had not yet inspected FaceTec's source code. *Id.* iProov did not state otherwise in its reply. ECF No. 134. For all the reasons discussed above, the Court grants FaceTec leave to amend its infringement contentions.

/ /

/ /

/ /

---

[7] LPR 1-12(a) states that one example of good cause, absent undue prejudice to the other party, is "material changes to the other party's contentions." Here, assuming FaceTec amends its infringement contentions, the Court finds that there is good cause for iProov to amend its invalidity contentions. And given that FaceTec sought leave to amend its contentions first, the Court finds that it will not be unduly prejudiced by iProov doing the same.

### III. MOTION TO COMPEL

FaceTec moves this Court to compel iProov to produce source code relating to the mobile platform of Liveness Assurance. ECF No. 89. Because this Court grants FaceTec leave to amend its infringement contentions, it denies FaceTec's motion to compel without prejudice.

### IV. CONCLUSION

**IT IS THEREFORE ORDERED** that FaceTec's motion to compel (ECF No. 89) is DENIED without prejudice.

**IT IS FURTHER ORDERED** that iProov's motion to strike (ECF No. 99) is GRANTED. The Court strikes FaceTec's definition of accused instrumentalities without prejudice.

**IT IS FURHTER ORDERED** that iProov's objection (ECF No. 126) is DENIED as moot given this reconsideration order.

**IT IS FURTHER ORDERED** that FaceTec may amend its infringement contentions to comply with LPR 1-6. Should FaceTec choose to amend, it must chart the mobile platform in accordance with LPR 1-6(c). The second-amended infringement contentions must be served on iProov by January 20, 2025. iProov will have until February 17, 2025, to serve its amended invalidity contentions on FaceTec, should it wish to do so.

**IT IS FURTHER ORDERED** that the order at ECF No. 122 is STRICKEN.

DATED this 6th day of December 2024.

_____
BRENDA WEKSLER
UNITED STATES MAGISTRATE JUDGE