EXHIBIT B

1
2
Grant E. Kinsel, Bar No. 172407
GKinsel@perkinscoie.com
PERKINS COIE LLP
3
1888 Century Park East
Suite 1700
4
Los Angeles, CA 90067
Telephone: 310.788.9900
5
Facsimile: 310.788.3399
6
[Additional Counsel on Signature Block]
7
Attorneys for JUMIO CORPORATION
8
9
**UNITED STATES DISTRICT COURT**
10
**NORTHERN DISTRICT OF CALIFORNIA**
11
12
13
FACETEC, INC.,

14
*Plaintiff,*

15
*v.*

16
JUMIO CORPORATION,

17
*Defendant*

18
19
and

20
IPROOV LTD.,

21
*Defendant-Intervenor.*

22

Case No. 3:24-cv-3623-RFL

JUMIO CORPORATION'S
NOTICE OF MOTION AND
MOTION TO STAY CASE
PENDING *INTER PARTES*
REVIEW

Date: January 7, 2025
Time: 10:00 AM
Place: Courtroom 15
Hon. Rita F. Lin

23
24
25
26
27
28

**TABLE OF CONTENTS**

NOTICE OF MOTION .................................................................................................. 1

RELIEF SOUGHT ....................................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ....................................... 2

I.    INTRODUCTION ........................................................................................... 2

II.   FACTS .............................................................................................................. 3

      A.    Procedural History of this Case ...................................................... 3

      B.    FaceTec's Co-Pending Litigation Against iProov, and
            FaceTec's duplicative infringement allegations. .......................... 5

III.  LEGAL STANDARDS .................................................................................. 6

IV.   ARGUMENT ................................................................................................... 8

      A.    A Stay is Appropriate in View of Jumio's IPRs ............................ 8

            1.    The early stage of this case weighs in favor of a
                  stay. ......................................................................................... 8

            2.    The potential simplification of issues pending
                  resolution of Jumio's IPRs weighs in favor of a
                  stay. ....................................................................................... 11

            3.    A stay will not unduly prejudice or present a clear
                  tactical disadvantage to FaceTec. ..................................... 14

      B.    A Stay is Appropriate in View of the Duplicative Nevada
            Case ................................................................................................... 17

            1.    A stay will not result in any damage to FaceTec. ............ 17

            2.    It is Jumio, not FaceTec, who is at risk of suffering
                  hardship or inequity. .......................................................... 19

            3.    Granting a stay case will significantly narrow the
                  parties' disputes and simplify the issues, while
                  denying the stay will risk complicating and
                  confusing the issues. ........................................................... 20

V.    CONCLUSION .............................................................................................. 22

**TABLE OF AUTHORITIES**

**CASES**

*AbCellera Biologics Inc. v. Berkeley Lights, Inc.*,
    No. 20-CV-08624-LHK, 2021 WL 4499231 (N.D. Cal. Aug.
    26, 2021) .................................................................................................10, 16

*Anza Tech., Inc. v. Toshiba Am. Elec. Components Inc.*,
    No. 17-CV-07289-LHK, 2018 WL 4859167 (N.D. Cal. Sep.
    28, 2018) ...........................................................................................................9

*Apple Inc. v. AliveCor, Inc.*,
    No. 22-cv-07608-HSG, 2023 WL 9187388 (N.D. Cal. Dec. 29,
    2023) ..............................................................................................10, 16, 17

*AT&T Intellectual Prop. I v. Tivo, Inc.*,
    774 F. Supp. 2d 1049 (N.D. Cal. 2011) .....................................................11, 12

*Barbaro Techs., LLC v. Niantic, Inc.*,
    No. 18-cv-02955-RS, 2019 WL 13232979 (N.D. Cal. Apr. 24,
    2019) ..............................................................................................10, 12, 17

*Black Hills Media, LLC v. Pioneer Elecs. (USA) Inc.*,
    No. 14–cv–00471–SJO, 2014 WL 4638170 (C.D. Cal. May 8,
    2014) .................................................................................................................13

*CMAX, Inc. v. Hall*,
    300 F.2d 265 (9th Cir. 1962) .................................................................6, 7, 17

*Contour IP Holding, LLC v. GoPro, Inc.*,
    No. 17-cv-04738, 2018 WL 6574188 (N.D. Cal. Dec. 12, 2018)....................10

*Core Optical Techs. LLC, v. Fujitsu Network Commc'ns, Inc.*,
    No. SACV 16-00437-AG-JPRx, 2016 WL 7507760 (C.D. Cal.
    Sept. 12, 2016) .................................................................................................13

*Cypress Semiconductor Corp. v. LG Elecs., Inc.*,
    No: C 13-4034 SBA, 2014 WL 5477795 (N.D. Cal. Oct. 29,
    2014) .................................................................................................11, 12, 16

*Delphix Corp. v. Actifio, Inc.*,
    No. 13-cv-04613-BLF, 2014 WL 6068407 (N.D. Cal. Nov. 13,
    2014) ...................................................................................................................7

*Dependable Highway Exp., Inc. v. Navigators Ins. Co.*,
    498 F.3d 1059 (9th Cir. 2007) .............................................................................7

*DSS Tech. Mgmt., Inc. v. Apple, Inc.*,
    No. 14-cv-05330-HSG, 2015 WL 1967878 (N.D. Cal. May 1,
    2015) ...........................................................................................................11

*Evolutionary Intel., LLC v. Facebook, Inc.*,
    No. 13-cv-04202-SI, 2014 WL 261837 (N.D. Cal. Jan. 23,
    2014) ................................................................................8, 12, 13, 16

*Finjan, Inc. v. Symantec Corp.*,
    139 F. Supp. 3d 1032 (N.D. Cal. 2015) ..................................... passim

*Fleming v. Escort, Inc.*,
    2013 WL 3995259 (D. Idaho Aug. 5, 2013)...................................21

*Fuller v. Amerigas Propane, Inc.*,
    No. 09-2493 TEH, 2009 WL 2390358 (N.D. Cal. Aug. 3,
    2009) ...........................................................................................................22

*Glover v. Cohen*,
    2021-2126, 2022 WL 5082130 (Fed. Cir. Oct. 5, 2022) ...............................21

*Gould v. Control Laser Corp.*,
    705 F.2d 1340 (Fed. Cir. 1983)........................................................12

*Hawai'i v. Trump*,
    233 F. Supp. 3d 850 (D. Haw. 2017)...............................................20

*Kessler v. Eldred*,
    206 U.S. 285 (1907).......................................................................21

*Khan v. Artivion, Inc.*,
    No. 2023-2347, 2024 WL 3419942 (Fed. Cir. July 16, 2024)........................21

*Lal v. Capital One Fin. Corp.*,
    No. 16-CV-00674-BLF, 2017 WL 282895 (N.D. Cal. Jan 23,
    2017) ...........................................................................................................19

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936)........................................................................6

*LELO, Inc. v. Standard Innovation (US) Corp.*,
    No. 13–cv–01393–JD, 2014 WL 2879851 (N.D.Cal. June 24,
    2014) ...........................................................................................................11

*Leyva v. Certified Grocers of Cal. Ltd.*,
    593 F.2d 863-64 (9th Cir. 1979) .......................................................7

*Papst Licensing GmbH & Co., KG v. Samsung Elecs. Co., Ltd*,
    403 F. Supp. 3d 571 (E.D. Tex. 2019)................................................21

*PersonalWeb Techs., LLC v. Facebook, Inc.*,
No. 13-cv-01356-EJD, 2014 WL 116340 (N.D. Cal. Jan. 13,
2014) ........................................................................................................ passim

*Phil-Insul Corp. v. Airlite Plastics Co.*
854 F.3d 1344 (Fed. Cir. 2017).........................................................................21

*Pi-Net Int'l, Inc. v. Focus Bus. Bank*,
No. C-12-4958-PSG, 2013 WL 4475940 (N.D. Cal. Aug. 16,
2013) ...........................................................................................................9, 16

*Pragmatus AV, LLC v. Facebook, Inc.*,
No. 11-CV-02168-EJD, 2011 WL 4802958 (N.D. Cal. Oct. 11,
2011) ...............................................................................................................7, 9

*Pragmatus Telecom, LLC v. NETGEAR, Inc.*,
No. C 12–6198 SBA, 2013 WL 2051636 (N.D. Cal. May 14,
2013) ...................................................................................................................9

*Reese v. Verizon Cal., Inc.*,
498 Fed. Appx. 980 (Fed. Cir. 2012)...............................................................21

*Roche Molecular Systems, Inc. v. Cepheid*,
No. C-14-3228, 2015 WL 124523 (N.D. Cal. Jan. 7, 2015)............................12

*Sec. People, Inc. v. Ojmar US, LLC*,
No. 14-cv-04968-HSG, 2015 WL 3453780 (N.D. Cal. May 29,
2015) .........................................................................................................7, 9, 13

*Target Therapeutics, Inc. v. SciMed Life Sys., Inc.*,
No. C-94-20775 RPA, 1995 WL 20470 (N.D. Cal. 1995) ................................9

*Tse v. Apple Inc.*,
2007 U.S. Dist. LEXIS 76521 (N.D. Cal. Oct. 4, 2007)..................................10

*Uniloc USA Inc. v. LG Elecs. U.S.A. Inc.*,
No. 18-cv-06737-JST, 2019 WL 1905161 (N.D. Cal Apr. 29,
2019) .................................................................................................................10

*Vance v. Google LLC*,
No. 5:20-cv-04696-BLF, 2021 WL 534363 (N.D. Cal. Feb. 12,
2021) .....................................................................................................18, 19, 20

**STATUTES**

35 U.S.C. § 311(c)(1)...............................................................................................16

35 U.S.C. § 313 .........................................................................................................5

35 U.S.C. § 314(b) ................................................................................................5

35 U.S.C. § 315(b) ..............................................................................................16

35 U.S.C. § 315(e) ..............................................................................................13

**OTHER AUTHORITIES**

37 C.F.R. § 42.107(b) ...........................................................................................5

**<u>NOTICE OF MOTION</u>**

PLEASE TAKE NOTICE that Defendant Jumio Corporation ("Jumio") hereby moves for a stay of this case pending *inter partes* review ("IPR") proceedings before the United States Patent and Trial Appeal Board ("PTAB") regarding all four patents asserted by Plaintiff FaceTec, Inc. ("FaceTec"), and seeks a hearing on the Motion on January 7, 2025, at 10:00 AM, or as soon thereafter as it may be heard by the Court, located at the San Francisco Federal District Courthouse, 450 Golden Gate Avenue, Courtroom 15, 18th Floor before the Honorable Rita F. Lin. Jumio's Motion is based on this Notice of Motion, the following Memorandum of Points and Authorities, the accompanying Declaration of Grant E. Kinsel and attached exhibit, the pleadings and papers on file, and such other materials and oral arguments as the Court may permit.

**<u>RELIEF SOUGHT</u>**

To greatly simplify the issues before the Court, and to preserve both the parties' and the Court's resources, Jumio seeks an order staying this case pending final (i.e., non-appealable) resolution of the IPR petitions it recently filed challenging the validity of all claims of all four asserted patents.

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.    INTRODUCTION

Jumio respectfully requests that the Court stay this case pending final resolution of Jumio's recently filed IPR petitions, which challenge the patentability of all claims in all four asserted patents. Normally, Jumio would have waited to bring this motion until the IPRs are instituted by the PTAB, which it expects to happen in approximately six months, but the unique facts and circumstances of this case justify entering a stay now.

One such unique circumstance is that FaceTec essentially requested a stay last month when it sought to dismiss this case without prejudice, and consequently, cannot now plausibly assert that it would be prejudiced by Jumio's requested stay. One of the primary bases for FaceTec's requested dismissal was "to avoid the potential for unnecessarily expending party resources, to preserve scarce judicial resources, and to prevent the possibility of contradictory rulings and judicial findings." Dkt. 45 (FaceTec Request to Dismiss) at 3. While concerns about duplicative litigation were and remain true, as explained below, Jumio nevertheless opposed FaceTec's request because the without-prejudice nature of the dismissal sought by FaceTec would have forced Jumio into a "use it or lose it" position with respect to its IPR petitions and thus, as the Court agreed, subjected Jumio to "plain legal prejudice." Dkt. 52 (Order Denying Request to Dismiss) at 2. Following the Court's denial of FaceTec's request, Jumio, once again, attempted to explain to FaceTec why that this case was unnecessary in view of FaceTec's case against iProov in Nevada, and to dispose of it by agreement. Yet, despite conceding that it "has not been able to independently confirm" whether any Jumio products actually infringe its patents, FaceTec insists on continuing this case against Jumio, thereby forcing Jumio's hand with respect to the IPR petitions. Dkt. 51 (FaceTec Reply re Request to Dismiss) at 2, 4. With the IPR petitions filed, a stay is now appropriate. Indeed, courts in this district routinely grant motions to stay once IPRs are filed—and

before they are instituted—due to the likelihood that such proceedings will narrow and simplify the parties' disputes, if not dispose of the case altogether. Such is the case here.

A second unique circumstance justifying an immediate stay of this case is the undisputed fact that this case is, as FaceTec puts it, "largely duplicative of the District Court of Nevada patent litigation between FaceTec and iProov, which (1) has been ongoing for nearly 3 years and is now at a more advanced stage, and (2) involves the same technology and several of the same FaceTec patents that have been asserted here." Dkt. 45 (FaceTec Request to Dismiss) at 4. Any outcome in the "duplicative" and "more advanced" Nevada case will necessarily and meaning-fully narrow—if not entirely dispose of—FaceTec's claims against Jumio in this case. This is so because FaceTec's claims against Jumio will, as a matter of law, either be exhausted (if FaceTec prevails) or barred (if iProov prevails) as to the accused iProov technology, which is the primary target of FaceTec's infringement claims in this case. A stay is, thus, warranted for the additional reason—separate from the likely simplification resulting from the IPRs—that it would prevent dupli-cative litigation and potentially inconsistent rulings.

This case is at its earliest stage and its makeup will be dramatically affected by either (or both) of the IPR proceedings and the Nevada proceedings. As such, the Court should enter an order immediately staying this case at least until a final, non-appealable judgment is entered in the IPRs.

## II.    FACTS

### A.    Procedural History of this Case

On June 14, 2024, FaceTec filed this lawsuit alleging that Jumio infringes four of its patents, primarily, by "using iProov's infringing technology." Dkt. 1, ¶ 32; *see generally id*. Indeed, while the Complaint included vague allegations re-garding "recently introduced Jumio-branded liveness detection technologies," the accompanying charts largely focused on liveness-detection technology provided by

iProov—the same technology at issue in FaceTec's case against iProov in the District of Nevada. *Id*.; Dkts. 1-5 – 1-8; Dkt. 45 (FaceTec Request to Dismiss) at 2 ("The products accused of infringement in [the Nevada] case include liveness detection technology that iProov supplies to Jumio and that Jumio provides to many of its customers."). Jumio immediately informed FaceTec that its allegations in this case appeared to be largely (if not entirely) duplicative of those in its separate case against iProov and accordingly requested that FaceTec dismiss this case against Jumio (with prejudice). *E.g.*, Dkt. 49-1, ¶ 2. FaceTec refused.

On September 18, 2024, the Court held its initial case management conference at which it set the case schedule, including setting trial for August 10, 2026. *See* Dkt. 38. At the conference, Jumio confirmed that it intended to file (1) IPR petitions with respect to all four patents asserted by FaceTec, (2) the instant motion to stay this litigation pending resolution of those IPRs, and (3) counterclaims of patent infringement against FaceTec. *See* Dkt. 32 at 9. The parties subsequently agreed to discuss potential resolution of their disputes and to extend the deadline for Jumio to file its counterclaims in view of such ongoing discussions. *See* Dkts. 43, 43-1, 44. But less than 24 hours before the agreed-upon extended deadline for Jumio to file its counterclaims, FaceTec—unilaterally and without warning or explanation—filed a request for voluntary dismissal without prejudice.[1] Dkt. 45. Jumio opposed this request, arguing that the Court should instead dismiss FaceTec's claims against it *with* prejudice, in part, because a dismissal without prejudice (as FaceTec requested) would confront Jumio with a "choice to 'use-it-or-lose-it'" for filing IPRs. Dkt. 52 at 2. On November 1, the Court denied FaceTec's request, agreeing that dismissal without prejudice was "not appropriate" because it would "affect [Jumio's] ability to defend against the refiled claims" contemplated by

---

[1] Because FaceTec filed its unilateral request to dismiss one day before the extended deadline for Jumio to file counterclaims, Jumio has not yet filed its counterclaims. Jumio reserves the right to request that the Court grant leave for Jumio to file those counterclaims should the Court deny this Motion to Stay.

1    FaceTec "in case it later learns that Jumio's non-iProov products do infringe." *Id.*

2    at 3; Dkt. 51 (FaceTec Reply re Request to Dismiss) at 4. The Court also granted

3    iProov's motion to intervene in this case. Dkt. 52.

4        Following the Court's denial of FaceTec's request for voluntary dismissal,

5    Jumio again approached FaceTec to attempt to resolve this case by agreement. But

6    FaceTec refused, leaving Jumio with no choice but to file its IPR petitions. So, on

7    November 7, Jumio filed IPR petitions directed to all claims of all four Asserted

8    Patents. The PTAB has not yet accorded a filing date to the petitions, but when it

9    does, FaceTec will have three months to file a preliminary response to each. *See* 35

10   U.S.C. § 313; 37 C.F.R. § 42.107(b). The PTAB will then decide whether to institute

11   each petition within three months from the date of FaceTec's response. *See* 35

12   U.S.C. § 314(b). In accordance with these statutory deadlines, Jumio expects Fac-

13   eTec to file its preliminary responses no later than February 2025, and the PTAB to

14   decide whether to institute the IPRs no later than May 2025. For each IPR that is

15   instituted, the PTAB can be expected to issue a Final Written Decision by approxi-

16   mately May 2026—some three months before this case is currently set for trial.

17       **B.    FaceTec's Co-Pending Litigation Against iProov, and**
18       **FaceTec's duplicative infringement allegations.**

19       On December 28, 2021, FaceTec filed suit against iProov in the District of

20   Nevada, alleging that iProov infringes two of its patents, both of which FaceTec

21   now asserts against Jumio in this case. *FaceTec, Inc. v. iProov Ltd.*, No. 2:21-cv-

22   02252-ART-BNW (D. Nev. 2021) (the "Nevada case"). The Nevada case is signif-

23   icantly farther along than this case. There, claim-construction briefing has been

24   completed[2] and the discovery process is underway. *See generally id.* at Dkts. 40–

25   46, 68, 89, 117. Jumio is not named as a defendant in the Nevada case, but as Fac-

26   eTec acknowledges, the "products accused of infringement in that case include

27

28   _____

     [2] A claim construction order has not yet been issued.

1    liveness detection technology that iProov supplies to Jumio and that Jumio provides

2    [or at some point provided] to many of its customers." Dkt. 45 (FaceTec Request

3    to Dismiss) at 2.

4        FaceTec's allegations against Jumio in this case are largely focused on these

5    same products. Recently, FaceTec served its infringement contentions, which, as

6    with the Complaint, do not materially expand its allegations against Jumio beyond

7    its allegations against iProov. Indeed, the only non-iProov products charted in Fac-

8    eTec's infringement contentions are the Jumio Showcase Applications, i.e., demon-

9    strative mobile applications that illustrate the look and feel of certain identity-veri-

10   fication solutions from a user's perspective, such as liveness checks, but are not

11   (and cannot be) used by customers to perform actual liveness checks. Importantly,

12   FaceTec's contentions do not allege that the Jumio Showcase Applications meet

13   each and every limitation of any asserted claim. Rather, FaceTec's contentions rely

14   extensively—and for some limitations, exclusively—on information regarding

15   iProov's liveness technology. FaceTec's contentions further confirm that FaceTec

16   and its legal team did not conduct an adequate prefiling investigation of *Jumio's*

17   products and do not have a good-faith basis for maintaining claims against any of

18   *Jumio's* products. As a result, this case is all but entirely duplicative of the Nevada

19   case. A copy of the letter Jumio recently served FaceTec detailing these issues—in

20   particular, FaceTec's failure to fulfill its obligations under Federal Rule of Civil

21   Procedure 11 and the Patent Local Rules—is attached as Exhibit A to the Declara-

22   tion of Grant E. Kinsel, filed concurrently herewith. In this letter, Jumio, once again,

23   requested that FaceTec dismiss its claims against Jumio.

## III.    LEGAL STANDARDS

25       "A district court has inherent power to control the disposition of the causes

26   on its docket in a manner which will promote economy of time and effort for itself,

27   for counsel, and for litigants." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)

28   (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936)). When determining

whether a stay is appropriate, courts consider three factors: (1) "the possible damage which may result from the granting of a stay," (2) "the hardship or inequity which a party may suffer in being required to go forward," and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Id.*

A court may, for example, "find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Dependable Highway Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007) (quoting *Leyva v. Certified Grocers of Cal. Ltd.*, 593 F.2d 863-64 (9th Cir. 1979)). This applies "whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court." *Id.*

Courts in this District have recognized a "liberal policy in favor of granting motions to stay proceedings pending the outcome of USPTO [] proceedings." *Finjan, Inc. v. Symantec Corp.*, 139 F. Supp. 3d 1032, 1035 (N.D. Cal. 2015) (quoting *Pragmatus AV, LLC v. Facebook, Inc.*, No. 11-CV-02168-EJD, 2011 WL 4802958, at *2 (N.D. Cal. Oct. 11, 2011)); *see also, e.g.*, *Sec. People, Inc. v. Ojmar US, LLC*, No. 14-cv-04968-HSG, 2015 WL 3453780, at *2 (N.D. Cal. May 29, 2015) (same). Indeed, "judicial efficiency and the desire to avoid inconsistent results may, after careful consideration of the relevant factors, counsel in favor of a limited stay, even before the PTAB has acted on a petition for IPR." *Id.* (quoting *Delphix Corp. v. Actifio, Inc.*, No. 13-cv-04613-BLF, 2014 WL 6068407, at *2 (N.D. Cal. Nov. 13, 2014)); *see also, e.g.*, *Sec. People*, 2015 WL 3453780, at *2 (same).

Courts consider three factors, in particular, "when determining whether to grant a stay pending IPR: '(1) whether discovery is complete and whether a trial date has been set; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical

disadvantage to the non-moving party.'" *Finjan*, 139 F. Supp. 3d at 1035 (quoting *Evolutionary Intel., LLC v. Facebook, Inc.*, No. 13-cv-04202-SI, 2014 WL 261837, at *1 (N.D. Cal. Jan. 23, 2014)).

## IV.    ARGUMENT

Jumio's recently filed IPR petitions, as well as FaceTec's ongoing litigation against iProov in Nevada, each form an independent and compelling basis for staying this case. This case is still in its infancy and FaceTec, by its own admission, will not suffer any damage or prejudice if it is stayed. Indeed, resolution of either or both of these concurrent proceedings will inherently narrow and simplify the issues in this case, thereby saving FaceTec (and the Court) significant time and resources. Proceeding with this case before any such resolution, on the other hand, will undoubtedly result in duplicative efforts, wasted resources, and potentially conflicting rulings on key issues. Accordingly, an immediate stay at least pending final resolution of the IPRs is warranted.

### A.    A Stay is Appropriate in View of Jumio's IPRs

Courts in this District routinely stay cases pending resolution of IPRs (and other post-grant proceedings) even before such proceedings are instituted where, as here, the case is still in an early stage, resolution of such proceedings will simplify the issues, and the stay will not result in any undue prejudice on the patent owner.

#### 1.    The early stage of this case weighs in favor of a stay.

There is no dispute that this "litigation is still in its early stages." Dkt. 52 at 3. The Complaint was filed just over five months ago, a case schedule was entered just over two months ago, the claim-construction hearing is set for over six months from now, and no party has served discovery requests. *See* Dkts. 1, 38; *see also* Dkt. 45 (FaceTec Request to Dismiss) at 3 (noting that, as of October 10, "this litigation is at an early stage, neither party has served discovery or infringement or invalidity contentions, and no depositions have been noticed or taken place"); Dkt. 52 (11/1/24 Order Denying Request to Dismiss) at 3 ("The Complaint was filed less

than five months ago, and a case schedule was set less than two months ago. Claim construction is not for another seven months."). Indeed, no party has even requested, and the Court has not entered, a protective order or an e-discovery order.

While FaceTec has now served its infringement contentions, it did so only *after* Jumio requested that FaceTec stipulate to this motion to avoid having to do so. In any event, a patent owner's service of infringement contentions does not constitute "material progress in the litigation" sufficient for this factor to weigh against entering a stay. *Pragmatus AV*, 2011 WL 4802958, at *2–3 ("Beyond the infringement contentions and possibly the invalidity contentions, no discovery has been produced, and no trial date has been set. When, as here, there has been no material progress in the litigation, courts in this district strongly favor granting stays pending inter partes reexamination."). And while the trial date has been set for August 10, 2026, that is nearly two years away—well after the PTAB is expected to issue Final Written Decisions on the IPRs—and "does not tip this factor against a stay." *Pi-Net Int'l, Inc. v. Focus Bus. Bank*, No. C-12-4958-PSG, 2013 WL 4475940, at *3 (N.D. Cal. Aug. 16, 2013); *see also, e.g., Anza Tech., Inc. v. Toshiba Am. Elec. Components Inc.*, No. 17-CV-07289-LHK, 2018 WL 4859167, at *1 (N.D. Cal. Sep. 28, 2018) ("Although the Court did set a trial date, that date is not until [seventeen months later.] Thus, the Court concludes this first factor [weighs] in favor of granting the stay."). Indeed, "it is the stage of the instant action, not the [PTAB proceeding], that is germane to whether a stay is appropriate." *Pragmatus Telecom, LLC v. NETGEAR, Inc.*, No. C 12–6198 SBA, 2013 WL 2051636, * 2 (N.D. Cal. May 14, 2013) (collecting cases).

At bottom, the costliest parts of litigation have yet to occur, which "weighs heavily in favor of stay." *E.g., Sec. People*, 2015 WL 3453780, at *2–3; *Ho Keung Tse v. Apple Inc.*, No. C 06-06573 SBA, 2007 WL 2904279, at *2 (N.D.Cal. Oct. 4, 2007) ("A stay is particularly appropriate for cases in the initial stages of litigation or in which there has been little discovery."); *Target Therapeutics, Inc. v. SciMed*

1    *Life Sys., Inc.*, No. C-94-20775 RPA, 1995 WL 20470, at *2 (N.D. Cal.1995) (find-

2    ing this factor weighed in favor of a stay given the absence of "significant discov-

3    ery" or "substantial expense and time ... invested" in the litigation); *Tse v. Apple*

4    *Inc.*, 2007 U.S. Dist. LEXIS 76521, at *5 (N.D. Cal. Oct. 4, 2007) ("A stay is par-

5    ticularly appropriate for cases in the initial stages of litigation or in which there has

6    been little discovery."); *AbCellera Biologics Inc. v. Berkeley Lights, Inc.*, No. 20-

7    CV-08624-LHK, 2021 WL 4499231, at *1 (N.D. Cal. Aug. 26, 2021) (noting that

8    "the parties are still at the beginning of fact discovery" and "have not yet filed any

9    of their clam construction briefs, which demonstrates that the case is still in its early

10   stages").

11           Indeed, courts in this District have found on countless occasions "that this

12   factor weighed in favor of a stay in cases where the parties had invested far more

13   resources and moved their cases closer to resolution than is the case here." *Uniloc*

14   *USA Inc. v. LG Elecs. U.S.A. Inc.*, No. 18-cv-06737-JST, 2019 WL 1905161, *3

15   (N.D. Cal Apr. 29, 2019) (collecting cases); *see also, e.g.*, *Finjan*, 139 F. Supp. 3d

16   at 1035–36 (finding this factor weighed in favor of a stay "[g]iven the relatively

17   early stage of th[e] litigation and the substantial work necessary for the case to pro-

18   ceed through trial," even though the parties had engaged in discovery and "already

19   submitted their claims construction briefs and the Court ha[d] held a claims con-

20   struction hearing"); *Apple Inc. v. AliveCor, Inc.*, No. 22-cv-07608-HSG, 2023 WL

21   9187388, *2 (N.D. Cal. Dec. 29, 2023) ("While the Court recognizes that claim

22   construction has begun, the Court finds that this case is still at a relatively early

23   stage overall. Discovery is far from complete… Accordingly, this factor weighs in

24   favor of a stay, certainly at least until the USPTO issues institution decisions as to

25   the AliveCor IPR petitions."); *Barbaro Techs., LLC v. Niantic, Inc.*, No. 18-cv-

26   02955-RS, 2019 WL 13232979, at *2 (N.D. Cal. Apr. 24, 2019) (finding this factor

27   weighed in favor of a stay because the "costlier stages of pretrial preparation re-

28   main," even though the parties had already "completed their claim construction

Jumio's Motion to Stay
24-cv-3623-RFL

1   briefing" and discovery was "already underway") (quoting *Contour IP Holding,*

2   *LLC v. GoPro, Inc.*, No. 17-cv-04738, 2018 WL 6574188, at *3 (N.D. Cal. Dec. 12,

3   2018) ("Although claim construction is complete and some substantial discovery

4   has already occurred, several costlier stages of pretrial preparation remain, not to

5   mention the trial itself. … This case is not too advanced to make a stay improper or

6   untenable.")); *Cypress Semiconductor Corp. v. LG Elecs., Inc.*, No: C 13-4034

7   SBA, 2014 WL 5477795, at *2 (N.D. Cal. Oct. 29, 2014) (similar); *DSS Tech.*

8   *Mgmt., Inc. v. Apple, Inc.*, No. 14-cv-05330-HSG, 2015 WL 1967878, at *1–3 (N.D.

9   Cal. May 1, 2015) (finding this factor weighed in favor of a stay where "significant

10  work" remained and fact discovery was "not scheduled to close for another six

11  months," even though the parties had, among other things, exchanged "multiple

12  sets of infringement and invalidity contentions and interrogatories" and "three sets

13  of written interrogatories," "collectively produced over 100,000 pages of docu-

14  ments," and "fully briefed claim construction issues"); *PersonalWeb Techs., LLC v.*

15  *Facebook, Inc.*, No. 13-cv-01356-EJD, 2014 WL 116340, at *3–4 (N.D. Cal. Jan.

16  13, 2014) (finding this factor weighed in favor of a stay "[c]onsidering that the

17  parties ha[d] yet to engage in the significant and costly work of conducting expert

18  discovery and preparing summary judgment motions," even though a claim con-

19  struction order had been issued and the close of fact discovery was "fast approach-

20  ing").

21         Accordingly, the early stage of this case weighs in favor of granting a stay

22  pending resolution of the IPRs.

23         **2.    The potential simplification of issues pending resolution**
24                 **of Jumio's IPRs weighs in favor of a stay.**

25         It is axiomatic that, in "the event that the PTAB grants relief on some or all

26  of the petitions, the scope of this litigation may be narrowed, particularly since the

27  petitions involve all of the patent claims alleged in this action." *Cypress Semicon-*

28  *ductor*, 2014 WL 5477795, at *2 (citing *AT&T Intellectual Prop. I v. Tivo, Inc.*, 774

F. Supp. 2d 1049, 1053 (N.D. Cal. 2011)); *see also LELO, Inc. v. Standard Innova-tion (US) Corp.*, No. 13–cv–01393–JD, 2014 WL 2879851, at *3 (N.D.Cal. June 24, 2014) (under this factor, the "standard is simplification of the district court case, not complete elimination of it by the PTAB"); *Finjan*, 139 F. Supp. 3d at 1035 ("Granting a stay pending IPR is 'particularly' likely to simplify the case 'when a party has obtained PTO review of each of the asserted claims in the patents-in-suit.'") (quoting *Evolutionary Intelligence*, 2014 WL 261837, at *2). Although the PTAB has not yet instituted the petitions, "the available statistical evidence show-ing a substantial likelihood that some claims will be invalidated militates in favor of a stay."[3] *Barbaro Techs.*, 2019 WL 13232979, at *2 (citing *Roche Molecular Systems, Inc. v. Cepheid*, No. C-14-3228, 2015 WL 124523, at *4 (N.D. Cal. Jan. 7, 2015) ("Several cases have granted a stay even where, as here, the PTAB has not yet decided whether to institute an IPR.")). Indeed, courts routinely find that be-cause even "the *possibility* that the PTO may institute review has the *potential* to streamline and even resolve [an] action" in which IPRs are filed on all claims at issue (as Jumio has done here), staying the case is "the most efficient use of re-sources."[4] *Finjan*, 139 F. Supp. 3d at 1037.

"Moreover, even if some of [FaceTec's] claims survive IPR, the Court will still benefit from the PTAB's rulings." *Cypress Semiconductor*, 2014 WL 5477795, at *2 (citing *AT&T Intellectual Prop. I*, 774 F. Supp. 2d at 1053). As explained by the Federal Circuit, post-grant proceedings not only "eliminate trial of [an] issue (when [a] claim is canceled)," but also "facilitate trial of [an] issue by providing the district court with the expert view of the PTO (when a claim survives the

---

[3] The institution rate for IPR and PGR petitions for the 2024 fiscal year was 68%. https://www.uspto.gov/sites/default/files/documents/ptab_aia_fy2024__roundup.pdf at 6; *see also id.* at 3, 5 (showing that the vast majority of such petitions were IPRs). The institution rate has steadily increased every year since 2020, and is typically higher for "Electrical/Computer" technol-ogy. *Id.* at 6, 8. In addition, of the 6,891 challenged claims that were subject to a Final Written Decision in fiscal year 2024, 5,400 (or roughly 78%) were found to be unpatentable. *Id.* at 13.
[4] All emphasis added unless otherwise indicated.

1    reexamination proceedings).” *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342

2    (Fed. Cir. 1983)); *see also Yodlee, Inc. v. Ablaise Ltd*, No. C-06-07222 SBA, 2009

3    WL 112857, at *2 (N.D. Cal. Jan. 16, 2009) (“Patent validity is a commonly as-

4    serted defense, and courts are cognizant of Congress’s intent to utilize the PTO's

5    specialized expertise to reduce costly and time-consuming litigation.”). In addition,

6    Jumio will be estopped from asserting any invalidity ground in this case that it

7    “raised or reasonably could have raised” for any surviving claims. 35 U.S.C. §

8    315(e); *see also*, *e.g.*, *Finjan*, 139 F. Supp. 3d at 1036 (“Staying the case pending

9    the outcome of IPR could simplify the case by rendering some or all of Finjan in-

10   fringement claims moot, estopping Symantec from asserting any arguments it

11   raised or reasonably could have raised in the IPR, and providing the Court with

12   PTAB's expert opinion on the claims at issue.”) (citing *Evolutionary Intelligence*,

13   2014 WL 261837, at *2).

14          And “even if the PTO decides to institute review and affirms the validity of

15   every asserted claim, the case would still be simplified because ‘such a strong

16   showing would assist in streamlining the presentation of evidence and benefit the

17   trier of fact by providing the expert opinion of the PTO.’” *Finjan*, 139 F. Supp. 3d

18   at 1036–37 (quoting *PersonalWeb Techs.*, 2014 WL 116340, at *4); *see also*, *e.g.*,

19   *Sec. People*, 2015 WL 3453780 at *3 (“Even if the PTAB does not invalidate any

20   claims, the PTAB’s claim construction and invalidity analyses ‘would likely prove

21   helpful to this Court,’ whether or not the standard applied is identical to the one this

22   Court must apply in the litigation.”) (quoting *Black Hills Media, LLC v. Pioneer*

23   *Elecs. (USA) Inc.*, No. 14–cv–00471–SJO, 2014 WL 4638170, at *6 (C.D. Cal. May

24   8, 2014)); *Core Optical Techs. LLC, v. Fujitsu Network Commc’ns, Inc.*, No. SACV

25   16-00437-AG-JPRx, 2016 WL 7507760, at *2 (C.D. Cal. Sept. 12, 2016) (“Even if

26   no claim is eliminated, the intrinsic record developed during the IPR may inform

27   on issues like claim construction”).

28

Finally, any concern or argument by FaceTec that this motion is premature is "alleviated by the short time frame" before the PTAB is expected to issue decisions regarding institution, after which FaceTec may file a motion to lift the stay in the unlikely event that, in FaceTec's view, the PTAB does not institute review of enough claims to meaningfully simplify the issues in this case. *See Finjan*, 139 F. Supp. 3d at 1037. But unless and until the PTAB—against all odds—denies institution of every IPR petition filed by Jumio, there is simply no upside to moving forward with this case until final resolution of each petition that is instituted. *Finjan*, 139 F. Supp. 3d at 1037 ("Were the Court to deny the stay until a decision on institution is made, the parties and the Court would expend significant resources on issues that could eventually be mooted by the IPR decision."); *see also*, *e.g.*, *PersonalWeb Techs.*, 2014 WL 116340, at *4 (finding that the four-month delay before PTAB's institution decision would issue was "relatively short" and did not outweigh anticipated simplification of issues).

Accordingly, the likelihood that the IPRs will simplify the issues in this case weighs in favor of granting a stay pending resolution thereof.

### 3.    A stay will not unduly prejudice or present a clear tactical disadvantage to FaceTec.

Based on FaceTec's representations to the Court when it sought to dismiss this case without prejudice just last month, it is hard to fathom any basis on which FaceTec could claim that a stay would subject it to undue prejudice or a clear tactical disadvantage. As an initial matter, FaceTec's request to dismiss was, in effect, a request to stay.[5] Indeed, FaceTec made abundantly clear that although it has no

---

[5] FaceTec even effectively equated the two, arguing that "filing the IPRs while this case is dismissed is **better** than filing the IPRs and then asking the Court to stay the case: the work associated with the IPRs is the same, while the litigation burden is reduced or eliminated without having to request a stay or wait until the stay takes effect." Dkt. 51 at 5–6 (emphasis in original). Of course, FaceTec's assertion that *Jumio* would somehow benefit from this case being dismissed *without prejudice* was manifestly incorrect. *E.g.*, Dkt. 52 at 3 ("FaceTec argues that no prejudice would result from voluntary dismissal without prejudice because Jumio remains free to initiate IPR now. (Dkt. No. 51 at 5.) But where there are significant costs associated with pursuing the defense, and the choice to pursue such defense must be made before its necessity is established, the choice to use-it-or-lose-it amounts

desire to pursue its claims against Jumio *now*, it certainly does not want to lose the opportunity to pursue them in the future. *E.g.*, Dkt. 51 at 2 ("To be clear, FaceTec has requested only dismissal ***without*** prejudice and does not request and cannot agree to dismissal with prejudice." (emphasis in original)), 3 ("[S]hould the Court decide to mandate that any dismissal be with prejudice, then FaceTec would expect to continue prosecuting this case."), 7 ("Should the Court instead agree with Jumio that any dismissal must be with prejudice, then FaceTec requests a reasonable opportunity to withdraw its request for dismissal."). FaceTec's "legitimate reasons" for seeking to temporarily extricate itself from prosecuting its claims against Jumio are also equally applicable to the instant motion. Dkt. 51 at 2. For example, FaceTec's stated desire "to avoid the potential for unnecessarily expending party resources, to preserve scarce judicial resources, and to prevent the possibility of contradictory rulings and judicial findings" will be achieved if the case is stayed pending resolution of the IPRs. Dkt. 45 at 3, 5 (similar).

Moreover, FaceTec disclaimed any argument that it will be prejudiced or disadvantaged if it cannot move its affirmative claims forward while defending against Jumio's IPRs by explicitly suggesting this ***exact*** scenario just one month ago. *E.g.*, Dkt. 51 at 2 ("Jumio's rights and ability to pursue [its declaratory-judgment invalidity counterclaims and IPR] proceedings will not be changed by the dismissal without prejudice of FaceTec's claims. ***Jumio remains free to do both***."), 5 ("Jumio will not have lost any rights to [its IPRs] by virtue of the requested dismissal without prejudice."); *see also PersonalWeb Techs.*, 2014 WL 116340 at *3 ("Courts have long acknowledged that a delay inherent to a stay does not, in and of itself, constitute prejudice.").

---

to no real choice at all. ... Being forced to choose between expending considerable resources or losing the defense of initiating IPR amounts to legal prejudice. Accordingly, FaceTec's motion for voluntary dismissal without prejudice is denied."). However, FaceTec cannot now logically argue that *defending* the IPRs while this case is *stayed* would not be ***better*** than doing so while also actively litigating this case.

1    For these reasons, Jumio believed that FaceTec would agree to (or, at mini-

2    mum, have no basis to oppose) a stay and proposed that the parties enter into a

3    stipulation (subject to the Court's approval) to avoid unnecessary briefing on the

4    issue. FaceTec refused. In any event, as explained below, none of the four subfac-

5    tors courts specifically consider when evaluating prejudice weigh against a stay:

6    "(1) the timing of the IPR petition; (2) the timing of the stay request; (3) the status

7    of review; and (4) the relationship of the parties." *Apple*, 2023 WL 9187388 at *3.

8    ***First***, Jumio filed its IPR petitions on November 7, 2024—less than five

9    months after being sued by FaceTec on June 14, 2024. This is well-within the

10   timeframe required by 35 U.S.C. § 315(b) and far from a potentially prejudicial

11   "undue delay." *See*, *e.g.*, *Cypress Semiconductor*, 2014 WL 5477795 at *3; *Evolu-*

12   *tionary Intel.*, 2013 WL 6672451 at *9. In fact, one of the asserted patents (U.S.

13   Patent No. 11,874,910) did not issue until January 16, 2024, and, thus, was not even

14   IPR-eligible until October 16, 2024[6]—less than a month before Jumio filed an IPR

15   on that patent.

16   ***Second***, Jumio brings this motion less than three weeks after filing its IPR

17   petitions on November 7, 2024. FaceTec cannot credibly argue that such timing

18   constitutes undue delay or suggests any "dilatory motives or tactics" on Jumio's

19   part. *See*, *e.g.*, *Pi-Net Int'l*, 2013 WL 4475940 at *4; *Abcellera Biologics Inc.*, 2021

20   WL 4499231 at *2. In fact, Jumio informed FaceTec on multiple occasions that it

21   intended to request a stay after filing its IPRs. *E.g.*, Dkts. 32 at 9 & 51 at 2.

22   ***Third***, given that Jumio acted expeditiously in filing this motion, the PTAB

23   has not yet instituted its IPRs. However, based on the statutory deadlines for IPR

24   proceedings, the PTAB will issue institution decisions in or around May 2025 and

25   Final Written Decisions in or around May 2026—well before the currently-sched-

26   uled trial date of August 10, 2026. In any event, delays "based on the length of the

27

28   [6] Pursuant to 35 U.S.C. § 311(c)(1), an IPR petition cannot be filed less than "9 months after the grant of a patent."

1   PTO's review *standing alone* do not amount to undue prejudice." *Pi-Net Int'l*, 2013

2   WL 4475940 at *4 (emphasis in original). Nor do delays in receiving institution

3   decisions. *PersonalWeb Techs.*, 2014 WL 116340 at *4 (finding a four-month delay

4   before receiving the Board's institution decision was "relatively short" and did not

5   outweigh the likelihood of simplification of issues); *Barbaro Techs.*, 2019 WL

6   13232979 at *3 (finding a five-month delay before receiving the Board's institution

7   decision did not prejudice the plaintiff).

8       **Finally**, FaceTec cannot proffer any credible "evidence to substantiate an

9   argument that direct competition will result" in prejudice, as required for this sub-

10  factor, *Apple*, 2023 WL 9187388 at *3, at least based on the positions it took when

11  requesting to dismiss this case without prejudice last month.

12      Accordingly, because FaceTec has no basis for claiming that a stay would

13  result in undue prejudice or a clear tactical advantage, a stay pending resolution of

14  the IPRs is warranted.

15          **B.    A Stay is Appropriate in View of the Duplicative Nevada Case**

16      This case should be stayed to prevent duplicative litigation and potentially

17  inconsistent rulings between this case and FaceTec's separate case against iProov

18  in Nevada, regardless of the disposition with respect to the IPRs. When considering

19  motions to stay outside the context of post-grant proceedings, courts generally fo-

20  cus on: (1) "the possible damage which may result from the granting of a stay," (2)

21  "the hardship or inequity which a party may suffer in being required to go forward,"

22  and (3) "the orderly course of justice measured in terms of the simplifying or com-

23  plicating of issues, proof, and questions of law which could be expected to result

24  from a stay." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). All three factors

25  weigh in favor of a stay.

26          **1.    A stay will not result in any damage to FaceTec.**

27      FaceTec has no reasonable basis for claiming that it would suffer any dam-

28  age as a result of staying this case for at least the same reasons it has no basis for

claiming any prejudice or tactical disadvantage, as explained above. *See supra* Section IV.A.3. These reasons include positions FaceTec took when, just last month, it requested to dismiss its claims against Jumio without prejudice. Perhaps most compelling with respect to this factor is FaceTec's admission that it does not currently have ***any*** basis for accusing any Jumio products—that is, any products that are not already subject to its claims in the Nevada case—of infringement. *E.g.*, Dkt. 51 at 2 ("It now appears … that Jumio's infringing products are all source through iProov—***which FaceTec is already suing in the District of Nevada***. … FaceTec might need to contemplate asserting its rights ***if it later finds*** that the representations of Jumio's counsel about non-infringement [of Jumio products] have been inaccurate."), 3 ("Dismissal with prejudice would risk loss of rights with regard to products that Jumio's counsel say do not infringe without verification of that assertion…"), 4 ("FaceTec is faced with the following circumstances: … The products that Jumio has actually developed without iProov ***probably do not infringe*** … but ***FaceTec does not have any definitive or independent source of confirmation of this***."; "dismissal without prejudice will protect FaceTec's interests ***in case it later learns that Jumio's non-iProov products do infringe***"); *see also* Ex. A. Accordingly, because FaceTec does not have any basis for asserting any claims of infringement beyond those already subject to adjudication in the Nevada case, it cannot logically suffer any damage as a result of being temporarily unable to pursue such elusive claims here.

Nor can FaceTec claim that any delay in resolving its claims against iProov products in this case will be harmful because such claims are moving forward— and are currently much farther along—in the Nevada case. *E.g.*, Dkt. 45 at 3 ("…the present lawsuit … adds little to the patent litigation against iProov that is already well underway in the District of Nevada, which involves the same technology and two of the same asserted FaceTec patents. It now appears likely that the current litigation will largely be an unnecessary and wasteful duplication of that ongoing

1  Nevada litigation."); *Vance v. Google LLC*, No. 5:20-cv-04696-BLF,  2021 WL

2  534363, at *5 (N.D. Cal. Feb. 12, 2021) ("Because Vance is the plaintiff in both the

3  instant case and in the IBM action, Google's request for a stay does not require that

4  Vance's claims be litigated by another party. Any generalized risk of delayed litiga-

5  tion is minimized by the fact that the IBM action is moving quickly, with discovery

6  set to end in July 2021, and therefore any delay will likely be minimal."). Simply

7  put, "this is not a scenario where [FaceTec] must sit idly by while other parties

8  litigate issues the bear upon their legal rights." *Id.*

9       To the contrary, FaceTec is actively litigating the same issues against one of

10  the same defendants (iProov) in multiple jurisdictions, thereby "unnecessarily ex-

11  pending [] resources" every step of the way. Dkt. 45 at 3, 5 (similar), 4 ("As such,

12  this litigation appears to be largely duplicative of the District Court of Nevada pa-

13  tent litigation between FaceTec and iProov, which (1) has been ongoing for nearly

14  3 years and is now at a more advanced stage, and (2) involves the same technology

15  and several of the same FaceTec patents that have been asserted here. *See Case No.*

16  *2:21-cv-02252-ART-BNW*. This concern becomes particularly important given

17  iProov's request to intervene in this case."). If anything, staying this case while the

18  "more advanced" Nevada case continues on will *benefit* FaceTec.

19       **2.    It is Jumio, not FaceTec, who is at risk of suffering**
20            **hardship or inequity.**

21       Although Jumio is not a defendant in the Nevada case, the outcome of that

22  case will necessarily moot FaceTec's duplicative claims in this case—either by way

23  of exhaustion or estoppel, as explained below. *See infra* Section IV.B.3. Forcing

24  Jumio to nonetheless defend against such claims is a recognized potential hardship

25  that further tips the scale in favor of staying this case. *Vance*, 2021 WL 534363, at

26  *5 ("Where a denial of stay would cause both parties to incur significant expenses

27  on litigation that may be rendered moot, 'the potential hardship from denying the

28  stay weighs slightly in favor of granting it.'") (quoting *Lal v. Capital One Fin.*

1    *Corp.*, No. 16-CV-00674-BLF, 2017 WL 282895, at *3 (N.D. Cal. Jan 23, 2017)).

2    So, too, is "the potential for inconsistent rulings and resulting confusion." *Id*. (quot-

3    ing *Hawai'i v. Trump*, 233 F. Supp. 3d 850, 854 (D. Haw. 2017)).

4    Accordingly, even though Jumio "is not being asked to litigate on two

5    fronts, it will nonetheless shoulder additional burdens if a stay is not granted."

6    *Vance*, 2021 WL 534363, at *6. Any differences between the Nevada case and the

7    instant case "do not negate the presence of substantial overlapping factual and legal

8    questions, which need not be litigated twice, causing burden to [Jumio]" and, thus,

9    weighing in favor of a stay. *Id*.

10
    **3.    Granting a stay case will significantly narrow the par-
11    ties' disputes and simplify the issues, while denying the
    stay will risk complicating and confusing the issues.**

12    The Nevada court will be addressing all of the same issues with respect to

13    two of the four patents asserted, and the same iProov technology accused of in-

14    fringement, in this case. *See*, *e.g.*, Dkt. 45 at 2 ("For almost three years, FaceTec

15    has been pursuing a patent infringement case against iProov Ltd. in the District of

16    Nevada (Case No. 2:21-cv-02252-ART-BNW), asserting two of the same patents

17    involved in this case. The products accused of infringement in that case include

18    liveness detection technology that iProov supplies to Jumio and that Jumio provides

19    to many of its customers."). For example, the Nevada court will soon issue claim

20    constructions for these patents, which may be relevant to this Court's understanding

21    of the same claims. Conversely, if this Court conducts claim construction without

22    the benefit of the Nevada court's decisions, there is a risk of potentially conflicting

23    constructions between the two cases, which may then lead to conflicting determi-

24    nations regarding infringement (with respect to the same accused technology) and

25    invalidity. The implications of such conflicting determinations may very well ex-

26    tend beyond the two patents asserted in both cases given the significant overlap

27    between the subject matter claimed in those patents and the two additional patents

28    asserted here.

1   Just as importantly, if the Nevada court determines that the accused iProov

2   technology does not infringe, FaceTec will likely be barred by collateral estoppel

3   (or the *Kessler* doctrine[7]) from asserting claims based on iProov's technology in

4   this case. *See*, *e.g.*, *Phil-Insul Corp. v. Airlite Plastics Co.* 854 F.3d 1344, 1353–57

5   (Fed. Cir. 2017) (finding collateral estoppel prevented the patentee from bringing a

6   patent infringement claim in a second suit where the accused product was essen-

7   tially the same as the product in the first suit that was found to not infringe); *Reese*

8   *v. Verizon Cal., Inc.*, 498 Fed. Appx. 980, 982 (Fed. Cir. 2012) ("collateral estoppel

9   in a patent case prevents a plaintiff who previously litigated a claim that certain

10   technology infringed its patent (and lost) from taking 'another bite at the apple" by

11   asserting that the same technology infringes the same patent"); *Khan v. Artivion,*

12   *Inc.*, No. 2023-2347, 2024 WL 3419942, at *2–3 (Fed. Cir. July 16, 2024) (affirm-

13   ing that collateral estoppel applied to a noninfringement judgment entered against

14   the patentee in a separate infringement action that involved the same accused prod-

15   uct and identical issues of noninfringement); *Glover v. Cohen*, 2021-2126, 2022

16   WL 5082130, at *2–2 (Fed. Cir. Oct. 5, 2022) (finding the patentee's suit was barred

17   by collateral estoppel due to a noninfringement judgment in a previous litigation

18   regarding the same accused product).

19   Conversely, if FaceTec recovers on its claims against iProov in Nevada, its

20   claims against Jumio will likely be exhausted as to the iProov technology accused

21   here. *See, e.g., Fleming v. Escort, Inc.*, 2013 WL 3995259, at *4 (D. Idaho Aug. 5,

22   2013) (dismissing the patentee's claims in a second suit against customer defend-

23   ants involving the same product, finding that, to the degree the patentee's claims

24   sought recovery from the defendants for reselling the same devices, "the claims

25   seek a double recovery that cannot be allowed"); *Papst Licensing GmbH & Co.,*

26   *KG v. Samsung Elecs. Co., Ltd*, 403 F. Supp. 3d 571, 589 (E.D. Tex. 2019) ("If a

27

28   [7] *Kessler v. Eldred*, 206 U.S. 285 (1907) (patentee precluded from pursuing users or resellers of noninfringing products).

1    patentee has collected actual damages from a manufacturer or seller, and those dam-

2    ages fully compensate the patentee for infringement by users, then the patentee can-

3    not recover damages from users of an infringing product").

4    As such, allowing FaceTec's claims to play out in the Nevada case will

5    likely narrow FaceTec's claims in this case to the benefit of all parties, as well as

6    the Court. *Fuller v. Amerigas Propane, Inc.*, No. 09-2493 TEH, 2009 WL 2390358

7    at *2 (N.D. Cal. Aug. 3, 2009) ("Duplication of case management tasks by multiple

8    courts is not an economical use of judicial resources."). Because the "factual issues

9    to be resolved in both cases are similar" and "[j]udicial economy … is the primary

10   basis courts consider when ruling on motions to stay," this case should be stayed

11   while such issues are resolved, at least in the first instance, by the Nevada court.

12   **V.    CONCLUSION**

13   An immediate stay of this case is warranted, both in view of the PTAB's

14   anticipated institution of IPR proceedings on all four patents asserted by FaceTec

15   in this case and of FaceTec's duplicative claims against Defendant-Intervenor

16   iProov in the District of Nevada. Both concurrent proceedings have the potential to

17   significantly narrow and simplify the issues in this case. Allowing such proceedings

18   to play out while this case is stayed will cause no prejudice or harm to FaceTec, and

19   will prevent both the Court and the parties from wasting resources litigating a case

20   that even the plaintiff does not want to litigate.

21   Accordingly, Jumio respectfully requests that the Court stay this case pend-

22   ing final resolution of its IPRs.

23

24

25

26

27

28

Jumio's Motion to Stay
24-cv-3623-RFL

Dated: November 27, 2024

PERKINS COIE, LLP

By: /s/ *Grant E. Kinsel*

Grant E. Kinsel, Bar No. 172,407
gkinsel@perkinscoie.com
Jessica Delacenserie, *pro hac vice*
jdelacenserie@perkinscoie.com
Samantha Carl, *pro hac vice*
scarl@perkinscoie.com
PERKINS COIE LLP
1201 Third Ave.
Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.3500
Fax: 206.359.9000

David Pekarek Krohn, *pro hac vice*
dpekarekkrohn@perkinscoie.com
PERKINS COIE LLP
33 East Main St.
Suite 201
Madison, WI 53703-3095
Tel: 608.663.7496
Fax: 608.283.4496

Jessica Kaiser, *pro hac vice*
jkaiser@perkinscoie.com
Tyler Knox, *pro hac vice*
tknox@perkinscoie.com
PERKINS COIE LLP
1900 Sixteenth St.
Suite 1400
Denver, CO 80202-5255
Tel: 303.454.2911
Fax: 303.291.2400

Attorneys for JUMIO CORPORATION

**CERTIFICATE OF SERVICE**

I hereby certify that on November 27, 2024, I electronically filed the fore-going document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record for the parties.


/s/ *Grant E. Kinsel*
Grant E. Kinsel

CERTIFICATE OF SERVICE
24-cv-3623-RFL